## A. F. DUNNEGAN v. L. P. BUTLER.

A power of attorney authorizing the agent to sell lands described therein as titles which the principal has placed in the hands of the agent to sell or transfer for him, and which are not otherwise designated, except as being "titles which were granted to citizens by the legal authorities of the republic of Mexico," will support a conveyance under it by the attorney, provided the land conveyed can be ascertained by reference to the titles thus described in the power.

In order to recover in an action for the land.conveyed through such a power of attorney, the land must be designated by evidence extrinsic of the power of attorney, establishing by such proof that it is the land intended by the author of the power to be conveyed.

APPEAL from Smith. Tried below before the Honorable R. A. Reeves.

This was an action of trespass to try title brought by L. P. Butler, against A. F. Dunnegan, for the recovery of thirty-one hundred and eight acres of land. The defendant pleaded "not guilty."

The chain of title through which the plaintiff claimed the land in controversy, embraced the original grant of a league of land lying in Burnet's colony, granted by George Antonio Nixon, commissioner, acting in behalf of the government of Mexico, to Wm. Luce, on the 21st day of February, 1835; a sale from Luce to D. A. Hoffman of the same, on the 10th day of February, 1836; a power of attorney from Hoffman to Melville Crossman and Samuel Kathrens, dated the 14th day of July, 1836, authorizing them to sell and convey certain lands described as follows:

"Know all men by these presents, that I, David Hoffman, resident of Gaines' Ferry, in the Sabine district, in the province of Texas, have made, constituted and appointed, and by these presents do make, constitute and appoint Melville Crossman and Samuel Kathrens, both citizens of the town and parish of Natchitoches, in the State of Louisiana, my true and lawful agents and attorneys in fact for me, and in my name to sell, transfer and de-

liver for such consideration as may be just and legal to them, all my right, title and interest in and to such pieces, parcels or tracts of land, the titles to which I have placed in their hands to sell or transfer for me." Proceeding to state more fully the power granted, the instrument concludes: "The titles which I have placed in their hands to sell, are titles which were granted to citizens by the legal authorities of the republic of Mexico."

It was agreed on the trial that the original grant to Luce be considered as evidence, and that it embraces the land in controversy, and that said title was granted to Luce as a colonist of Burnet's colony.

To the introduction in evidence of the power of attorney aforesaid, by the plaintiff, the defendant objected upon the ground that the power of attorney did not embrace the title aforesaid to William Luce, nor the deed from Luce to Hoffman, and could not go to the jury without evidence *aliunde* that it embraced said titles or conveyances. The objection was overruled, and the instrument read as evidence, to which the defendant excepted. The plaintiff introduced a conveyance from Crossman to John S. Thorn, and subsequent conveyances through several grantees down to the plaintiff.

The court instructed the jury that " the chain of title from Luce to the plaintiff is sufficient to entitle him to recover in this suit."

Verdict for the plaintiff, and decree rendered accordingly.

The appellant assigned among other grounds, that the court erred in permitting the copy of the power of attorney to go to the jury as evidence.

*A. H. Willie*, for the appellant.—The language of the power of attorney is very indefinite; no specific description of the land is given, and no general description of it is contained therein; but it is simply stated that he is to sell and convey certain lands, the title papers of which, he (Hoffman,) had placed in their hands to sell or transfer for him. From the face of that instrument can any one determine what particular lands these agents were authorized to convey? Assuredly not.

How then are we to inform ourselves as to the extent of the powers conferred upon these agents? ˇ We must first ascertain by extrinsic evidence what title papers were placed in the hands of Crossman and Kathrens, and we must then examine these papers to see what. lands they describe. This is laying down the rule as favorably for the plaintiffs as it can possibly be made by reference to the law books. Indeed it would seem very doubtful from the authorities, whether this is such a case as will permit the introduction of parol proof to explain the intention of a grantor, which cannot be derived from the written instrument executed by him. Powers of attorney are more strictly construed, perhaps, than any other instrument, and the authority is never extended beyond that which is given in terms, or which is necessary and proper for carrying the authority so given into full effect. (Story on Agency, § 68.)

That parol proof is necessary to identify persons or things described in written instruments, where they are not sufficiently described in the instrument itself, is a very self-evident principle ; the only doubt which formerly existed was as to whether or not it was admissible to explain such indefinite terms, or whether the instrument was void for uncertainty. It would seem that such proof was originally admitted in cases of wills, in order to carry out the wishes of the testator, but it is now, and has for a long time been received to ascertain the intention of the party to any written instrument. Mr. Phillips in his treatise on Evidence lays down the following rules on the subject : " The intent of the party is to be ascertained from the meaning of the words in the instrument, and from these words alone, with the aid of such extrinsic evidence as the law permits to be used, in order to enable a court to discover the meaning of the terms in the instrument, and to apply them to the particular facts of the case." (2 Phil. on Ev., p. 276.)

Again, he says that " extrinsic evidence is admissible for the purpose of applying the instrument to the facts, and of determining what passes by it, or who take an interest under it; a second description of evidence is admissible, viz : every material fact that will enable the court to identify the person or thing mentioned in the instrument, and to place the court whose province it is to de-

clare the meaning of the words of the instrument, as near as may be in the situation of the parties to it." (Ib., 277.)

So much as to the admissibility of the evidence. As to its necessity, he says : " It is obvious that some kind of extrinsic evidence, even in the simplest case, except where the mere exposition of the instrument taken by itself alone, is required of the court, is indispensably necessary and therefore admissible." (P. 292, 3.)

Again, " if a party to an instrument, in describing the subject matter, refer to some exclusive fact, or to some other written instrument, it may be indispensably necessary to obtain information of the fact or instrument referred to, for the purpose of identifying the subject matter, and ascertaining the party's intention." (Ib., 293.) And on page 297, he says, " It may be that the subject of a devise is described by reference to some extrinsic fact ; in such case it is not only competent, but absolutely necessary, to admit extrinsic evidence for ascertaining that fact, and through that medium to ascertain the subject of the devise." The latter language is much the same with that used by Sir Wm. Grant in Sanford v. Raikes, 1 Merivale Ch. R., p. 653 ; and in reference to it the distinguished Master of the Rolls, says he "does not see what this has to do with cases where there is a reference to some paper that is to make a part of the will. There it may be contended that the will itself must specify the paper that must be incorporated into it ;" intimating, that in case where a party refers to some other paper, which is to be made part of his conveyance, he must specify it so particularly that it may be ascertained from the words of the instrument itself, and resort could not be had to extrinsic evidence to identify it. If such be the law in cases of wills, it should certainly be much stronger in reference to powers of attorney, and this one having given no specific description of the land or of the title papers in which that description was to be found, could not be explained by evidence outside of the power, and would be of no effect. But it is not necessary for a reversal of this case to carry the doctrine so far. We only contend that where a grantor, instead of describing the thing granted by his conveyance, in such terms that it can be identified without other proof, refers to another instrument for its description, resort must be had to that instrument, and proof

must be made to identify it as the instrument to which he allu-
ded.    This is the doctrine laid down in the authorities above cited,
or plainly deducible from them. (See also note 263, p. 495, Vol.
4., Phil. on Ev.)    Sir Wm. Grant, in the case above cited from
Merivale, says : " Where there is a devise of the estate purchased
of A., or of the farm in the occupation of B., nobody can tell
what is given till it is shown by extrinsic evidence what estate it
was that was purchased of A., or what farm was in the occupation
of B." And so it may be said in this case, that no one can tell
what land the agents were empowered to convey, until it is shown
what title papers were placed in their hands by their principal,
and what land was described in their title papers.    No testimony
whatever of this character was introduced; and so far from the
courts being placed " in the situation of the parties to the instru-
ment," neither the court nor jury could tell from the proof before
them, what papers Crossman and Kathrens obtained from Hoff-
man.    The presumptions were rather against the probability that
these agents ever had in their possession this particular deed from
Luce to Hoffman.    Hill, the agent and grantor of plaintiff, who
professes to have an intimate acquaintance with the titles to this,
particular land, swears, in his affidavit, that all the evidences of
title which he or plaintiff ever had were on file in this suit.    Now
it is a remarkable circumstance that all these title papers, with one
exception, (the *testimonio*) are copies from the clerk's office.    So
that at least as far back as Hill, no original title papers had been
in possession of those claiming this land.    The presumption would
seem to be, that such was the case also with those through whom
Hill and Butler derived title.    The title papers referred to in the
power of attorney, could not have included the certified copy of
the deed to Hoffman, alluded to in the affidavit, for the certificate
bears date subsequent to the time of its execution.    But the bur-
den of proof was not upon the defendant to show that this was not
one of the title papers referred to in the power, but the affirmative
should have been shown by the other party.    Nevertheless, the
court admitted the deed without proof that it was connected with
the power of attorney, and charged the jury that the plaintiff had
made out a complete chain of title to the land in controversy.    In

this, with due respect it is submitted, the court erred, and for this error the judgment should be reversed.

*George W. Chilton* and *T. W. Jones*, for the appellee.

WHEELER, C. J.—The right of the plaintiff to his recovery in this action, depends upon the authority of the attorney, Crossman, to convey to Thorn the land in controversy. The power of attorney of the 14th of July, 1836, under which the attorney made the conveyance by his deed of the 18th of January, 1838, contains no description of the land. If it is sufficiently certain to be capable of being supported as a valid power, it is by reason of its reference to the titles in the hands of the attorney. These are referred to in the instrument as the titles " I have placed in their hands to sell or transfer for me," and it is added, " the titles which I have placed in their hands to sell are titles which were granted to citizens by the legal authorities of the Republic of Mexico." These are the only words of description or identity by which to ascertain the application of the power, or the lands which it was intended to empower the attorney to convey; and it must be admitted that they are very indefinite. If the power can be supported, it must be by proof that the title here in question was one of those referred to as having been placed in the hands of the attorney. A case is cited by Broom in his Legal Maxims, which may be an authority for sustaining the power by the aid of such proof. "An agreement in writing for the sale of a house did not, by description, ascertain the particular house, but it referred to the deeds as being in the possession of A. B., named in the agreement. The court held the agreement sufficiently certain, inasmuch as it appeared upon the face of the agreement that the house referred to was the house of which the deeds were in the possession of A. B., and consequently the house might easily be ascertained before the master, and *id certum est quod certum reddi potest.*" (Broom's Legal Maxims, p. 482–3.) The report of the case is not accessible, but from this statement of it, it would seem an authority to warrant the admission of evidence to ascertain the application of the instrument, and render it certain what land was intended to be

conveyed under the power in this case. I am not aware that greater certainty is required in a letter of attorney than in an agreement for the sale of land. But it is clear that there must be evidence to identify the present as one of the titles referred to in the instrument, since the instrument itself contains no matter of description by which to identify the title, or the land conveyed by the attorney. By its terms, unaided by extrinsic evidence, it would as well support a conveyance of any other lands which the author of the power may have held under a title issued to a citizen by the legal authorities of the Republic of Mexico, as of the land embraced in the deed of the 18th of January, 1838. Unquestionably it was necessary to ascertain by evidence, upon the trial, that this was the land intended to be conveyed under the power. And as there was no such evidence, there was a failure on the part of the plaintiff to show title in himself to the land in controversy. The consequence is, that the judgment must be reversed, and the cause remanded for further proceedings.

Reversed and remanded.