B. F. HAMMOND ET AL. v. G. M. COURSEY ET AL.

(November 30, 1880.)

POWER OF ATTORNEY.— A copy of a power of attorney properly authenticated is not admissible in evidence without showing the loss of the original or accounting for its non-production.

It is not necessary for a power of attorney to describe the lands authorized to be conveyed with particularity; it will be sufficient if it can be shown what were intended.

EVIDENCE.— It is error for the judge, in his charge, to recite the evidence and call the attention of the jury to particular portions of it, and tell the jury from such evidence they might presume a certain fact to exist. This would be a charge upon the weight of evidence.

When one side introduces evidence the other may use it for every legitimate purpose.

APPEAL from Falls county. Opinion by QUINAN, J.

STATEMENT.— From the state of the case it will be seen that many of the numerous questions which have been raised by the assignment of errors in this case have already been considered and determined in the cases in the supreme court between the plaintiffs here and other parties growing out of the same titles and testimony, and we are, therefore, relieved of the necessity of reconsidering them. See Hammond v. Hough, 52 Tex., 63. The questions now to be considered are as to the admissibility in evidence of the power of attorney of October, 1838, from Steele to Livermore, the admissibility of the testimony of Connally as to his understanding how Livermore acquired the land in controversy, etc., and the admission of the transcript of proceedings in the succession of Livermore, and the judge's charges.

The admissibility of the power of attorney was objected to on the ground that it was but a copy; that no predicate was laid for its admission by proof of the loss of the original, or its non-production accounted for.   The court permitted it to be read as an ancient document.   This instrument, or the original of which it is a copy, appears to have been drawn up and executed before the notary, Harvey, in accordance with the laws in force in the year 1836.   Smith v. Townsend, Dallam, 569.   Acts of this character were performed in the notary's office, and they remained there as a part of his record.   He authenticated his acts with instrumental witnesses, and gave copies to serve the parties as testimony, signing his name as notary, with witnesses of his existence.   Seals were then unknown as means of authentication.   This inconvenient method for the execution of instruments was novel and unaccustomed to our people, and it was doubtless with a view to the adoption of a mode with which they were more familiar, that the several statutes were passed by the congress of the republic for the appointment of notaries public, and providing the manner in which their acts should be authenticated.   The act of December 20, 1836, made the chief justices of the county courts *ex officio* notaries public, and directed that the seal of the county court should be their notarial seal, and be affixed to all instruments and attestations.   The act of November 16, 1837, provided for the appointment of notaries for the ports of entry (of which Matagorda was one), and its second section declared " That the several notaries public shall have a seal of office, and all certificates or other acts performed by them shall be signed by the said notaries, and the seal of office thereunto affixed."

OPINION.— We have little doubt that these acts were intended to supersede the former cumbersome mode of the authentication of instruments and supply its place.   Instead of authenticating his acts with assisting witnesses, after the adoption of these statutes, the notary could only

do so by his signature and seal of office. The instrument of which that offered here in evidence purports to be a copy does not appear to have been so authenticated. Wanting the seal of the notary, it is not an authentic act, but simply a private writing; effectual, doubtless, as any other instrument, signed by the maker and attested by subscribing witnesses, but nothing more. It was the original, but not authenticated so as to be, of itself, proof, or form a part of the notary's archives. A copy of it, under the notary's hand and seal, does not prove that the original was ever executed. Nor would the original, if offered, prove itself, except as all other private writings may, in certain circumstances, be considered as proven. The question, then, as to the admissibility of this instrument must be determined by the same rules as other private writings; and it is manifest that, as a copy, it was but secondary evidence, and not admissible without proving the loss of the original or accounting for its non-production. The original power of attorney was the best evidence and should have been produced, or some good reason given why it was not.

But this copy seems to have been considered by the court as a testimonio or second original, and so admitted as an ancient instrument upon the supplanatory proof of its having been found in the custody of parties claiming under it, and that it had been acted upon. This, as we have shown, was a mistake. If it was a "second original" it needed no supplanatory proof, because it was given under the hand and seal of the notary, and his certificate was neither better nor worse because of its antiquity.

The objections, therefore, of plaintiffs to the introduction of this instrument were well taken and should have been sustained.

An objection is made also to this instrument on the ground that it does not sufficiently describe the lands which it is intended the attorney shall be authorized to sell, but this, we think, is untenable. The document says, "those

lands contained in three deeds in favor of said affiant, containing nine thousand five hundred acres more or less, which deeds are in the hands of his said attorney, or would be more particularly described." It was perfectly competent to show, by proof, what lands were meant. The fact that the deeds for lands corresponding to that amount were in the possession of the curator of Livermore would tend strongly to establish that fact. The conveyance by Livermore of the land under this power of attorney and other circumstances might be adduced which would render it perfectly clear what lands it was intended to embrace. Hughes v. Sandal, 25 Tex., 164. It was a question of fact for the jury to determine, and properly submitted to them. It cannot be said that there was no evidence to warrant its submission. Dunnegan v. Butler, 25 Tex., 501; Burleson v. Burleson, 28 Tex., 415; Early v. Sterrett, 18 Tex., 116.

The judge, on the trial, charged the jury, in effect, that "this power of attorney from Steele to Livermore, dated October 6, 1838, proves itself as an ancient document, and proves that Livermore had power to make a valid conveyance of the lands described in said power," etc., and this charge is assigned as error. From what we have said it follows that this charge is erroneous. The instrument was improperly admitted in evidence.

The sixth division of the judge's charge is assigned for error:

6. "In determining the question whether the said power of 1838 included the land in controversy, you will consider the fact that the deed was made by the attorney soon after its execution, reciting said power as his authority, then recorded at the same time, the defendants claiming and asserting title under them, made the instruments, being in the custody, the lapse of time since the transaction, the exercise of right of ownership and payment of taxes on the same by the defendants or their vendor, under whom they claim, together with power of 1839 from Steele to Liver-

more to the lands therein described, which power does not include the land in controversy, together with all the facts in evidence before you, in determining whether the land in controversy is a part of the nine thousand five hundred acres named in said power of 1838; and in the absence of direct proof you are authorized to presume from such facts and circumstances that the land in controversy is part of that named in said power dated in 1838. Such presumption is not a legal presumption by which you are so bound to find; but you are to find the fact or not from a consideration of the facts and circumstances in evidence."

We are of opinion that this instruction is obnoxious to the objection made as a charge upon the weight of evidence. It was improper to recite the documents and facts given in evidence, calling the attention of the jury to the power of attorney of 1839, and then instruct them that, from these facts and circumstances, they were authorized to presume that the land in controversy was part of that named in the power of attorney of 1838; nor was the error remedied by telling them that this was not a legal presumption by which they were bound to find. Woods v. Chambers, 20 Tex., 247; Castro v. Illies, 22 Tex., 479. See Gray v. Burk, 19 Tex., 228; Rogers v. Broadnax, 24 Tex., 538; McFall v. Walker, 25 Tex., 327; Kimbro v. Hamilton, 28 Tex., 560; Bryant v. Kelton, 1 Tex., 415.

The admission of the transcript of the record of the district court of the parish of Orleans is assigned for error. This objection is not well taken. The plaintiffs themselves introduced it in evidence, and the defendants had the right to use it to show all the proceedings in the administration of Livermore. It was relevant and important as tending to rebut the charge of fraud or concealment of the acts of Livermore, for it disclosed how readily Steele or his heirs could have obtained specific information of the existence of this power of attorney of October 4, 1838, and the conveyance of the land in controversy by virtue of it.

The objection to the testimony of Connally is not well

3

taken. It appears from this record that the plaintiffs themselves introduced it. It was taken by them upon a bill of discovery. It was admissible as tending to show his good faith in the purchase of the Bailey bond. He had been charged with knowledge of the alleged fraud committed by Livermore, and he had a right to purge himself of it. In so much of his testimony as tends to prove facts in controversy by his understanding of them, the charge of the judge directed the jury that "his opinions or conjectures are not proof of the facts so believed or conjectured by him," and the jury could not, therefore, have been misled by the testimony.

The other points which have been raised by the assignments in this case have been determined in the cases referred to, and it would be quite unnecessary to reconsider them here. It is only useful to refer to them. For the errors indicated the judgment is reversed and the cause remanded.