Lipscomb, J.
We will confine ourselves to the points made by the appellant in the argument. It appears that for the purpose of showing that Robert Kelton exercised acts of ownership over the property, after the sale, the register of the assessor of Texas, for the county of Montgomery, with the evidence of the collector that it was the one handed to him by the assessor, was offered in evidence by the plaintiff and rejected by the court. We do not think the court below erred in doing so. By the second section of the act of congress of 1837 (1 Laws Texas, 259), the assessor is required to take an inventory of all the taxable property in his district or county, and to make out duplicate registers of such property, one of which he is required to transmit to the treasury department, and the other to give to the collector. These registers are required to be made out from the original inventories which the assessor shall preserve in all cases as reference. There is no law giving the register offered the dignity of testimony; it was nothing more than a copy made out from the inventory. If the assessor had been introduced with the original inventories, and proved them, it would certainly have been better evidence than the register. The plaintiff’s counsel asked the judge to charge the jury, that if Robert Kelton remained in possession of the negroes and land, after such sale until his death, it was fraud per se against creditors; which charge was refused, and the refusal excepted to, and this we are called on to revise.
It is not improbable that questions of fraudulent sales to defeat creditors may have arisen at a very early date, as it is stated in Shepherd’s Touchstone, as a rule of law, “ if a debtor secretly make a general deed of his goods to one of his creditors, and continue in the use and occupation of the goods as his own, the deed is fraudulent and void against a subsequent judgment creditor, notwithstanding the deed was on good consideration ”• — p. 66. This rule seems to be so well founded in wisdom and sound morality, that it would hardly be questioned. By remaining in possession after such secret sale, and using the property as his own, he gains a credit and deludes honest men, who on the faith of such false colors credit him. It is, how *(299) ever, to the decisions under the statute of the 13th Elizabeth we must look, as that statute, so far as the point under consideration is concerned, is not materially different from our own.
The first case under the statute, and the one that has always been considered the leading one, and as the one laying down the true rales that should govern on the question of fraudulent sales, is Twyne’s case, reported in 3 Coke, 80. It was on information filed by Sir Edward Coke, the attorney general, in the star chamber. “ One Pierce was indebted to Twyne £400, and was indebted to C. £200; O. brought an action of debt against Pierce, and pending the writ, Pierce, being possessed of goods and chattels to the value of three hundred pounds, in secret made a general deed of gift of all his goods and chattels, real and personal whatever, to Twyne on satisfaction of his debt. Notwithstanding, Pierce continued in possession of the goods, and some of them he sold and shore the sheep and marked them with his own mark; and afterwards C. had judgment against Pierce, and had a fieri facias directed to the sheriff of Southampton, who, by force of the said writ, came to make execution of the said goods; but diverse persons, by command of the said Twyne, did with force resist the said sheriff claiming them to be the goods of the said Twyne by force of the said gift, and openly declared by command of the said Twyne that it was a good gift and made on a good and lawful consideration ; and whether this gift on the whole was fraudulent and of no effect by the said acts or not was the question. It was ruled that, 1. This case has the signs and marks of fraud because the gift is general, without exception of his apparel or anything of necessity. 2. The donor continued in possession and used them as his own, and by reason thereof he traded and trafficked with others and defrauded and deceived them. 3. It was made in secret. 4. It was made pending the writ. 5. Here was a trust between the parties, for the donor possessed all and used them as his proper goods; and fraud is always appareled and clad with a trust and trust is the cover of fraud. 6. The deed contains the statement that the gift was made honestly, truly and l>ona fide.” It was ruled that notwithstanding here was a true debt due to Twyne and a good consideration for the gift, yet it was not within the proviso of the said act. This proviso is that it is not to extend to any estate in land, etc., lawfully conveyed, the purchaser not having notice of such fraud, covin, etc. (similar to our own). Twyne was convicted of fraud and he and four others of a riot.
The rules laid down in this case are acknowledged to be sound and have never been questioned, and in all the conflict of decisions that *(300) has since arisen, they all profess to be in conformity to them; we have, therefore, thought it proper to give the case as it is found reported.
We have said that the rules of Twyne’s case have never been controverted, openly and directly, however much their meaning may have been distorted. The case was tried in the 44th of Elizabeth, and down from that period until about the middle of the reign of George III. there is no case found assuming the doctiine that the fact of possession remaining with the vendor was fraud per se, until it was promulgated in Edwards v. Harben, 2 Term, 287. In that case the ground was taken, aud it has given rise to a conflict of decision that judging from the past may yet be long before it is ended. It would seem a hard and difficult undertaking to sustain this decision on any one or all of the rules collectively in the leading cases. In Twyne’s case the judges dissect the whole case as made out in the evidence, and show that so many of its component parts wear the signs or marks of fraud, that they result in the conclusion of fraudulent intent. Ho one of them is held to be sufficient of itself to constitute fraud. They were each of them badges or presumptions from which this very reasonable conclusion was drawn. Is it reasonable to suppose that if the possession remaining with the vendor after such sale constituted of itself fraud, that they would have connected that fact with others in.support of their payment and designate them as so many signs or marks of fraud? If it was fraud itself, to call it the badge of color would be absurdly to substitute the shadow for the substance. The rule in Edwards v. Harben, as understood and practiced in those cases where it has been adopted, tramples down and destroys all the grounds left for the explanatory proof by the Lord Keejjer, Egerton, as it cannot be denied that presumptions however strong are no longer proof, when met by positive or satisfactory testimony, repelling and showing that the presumption is not in fact true. The lord keeper’s rule in Twyne’s case would have allowed this to be done. The rule in Edwards v. Harben forbids and excludes all such proof. Mr. Justice Buller on that case says, there is no room for proof, it is not a presumption, it is fraud per se. I have endeavored by placing these two cases, the parent and, as it appears to me, the spurious offspring in juxtaposition, to facilitate the comparison. And it does appear that if the assumption that they are both based on the satne principle can be sustained, it can only be done by the'far-fetched and most improbable supposition that their lordships of the star chamber were not acquainted with the language they used; and that when they said signs and marks of fraud, they meant to say it was fraud itself beyond all *(301) dispute. But a sign or a mark is not the thing itself, a likeness is not the original. Appearances are delusive, and when not permitted tobe explained in the administration of the law, would lead to very unjust and most calamitous results. It is possible, however, that Mr: Justice Buller, in Edwards v. Harben, may not have been correctly understood; Mr. Smith, a writer of some distinction, in his notes on Twyne’s case, after commenting on the case of Edwards v. Harben, and enumerating the eases in which it had been followed in its fullest extent, and those in which it had been qualified or denied to be sound law, makes the following judicious remarks, and coming from the quarter they do, from the arena of the first courts, claims for them a high degree of consideration. He says; “However, though in Edwards v. Ilar-ben, it was laid down in the express terms above stated, that an absolute sale without delivery of possession was in law fraudulent, the tendency of courts has lately been to qualify that doctrine, and leave ..the circumstances of each case to a jury, bidding them to decide, whether the presumption of fraud deducible from the absence of a transmutation of possession shall prevail; and indeed, in Edwards v. Harben, the words of Buller, Justice, were “ if there be nothing but an absolute conveyance without the possession, that in point of law is fraudulent,” by which his lordship may have intended, that when there was nothing, i. e., no facts whatever appearing in the case, except the conveyance and the non-delivery, that then the inference of fraud would be so strong that a jury ought not to resist it.
But it is very different in cases where, although the conveyance is absolute and the possession has not passed, still there are surrounding circumstances wdiieh show that a fraud may not have been intended. In such cases it cannot possibly be said that there is nothing but an absolute conveyance, without possession, and he cites Latimer v. Baston, 4 B. and C. 652. If such was really the meaning of Mr. Justice Buller, it is certainly a misfortune to the profession, deeply to be regretted, that he had not been more guarded in his expression and made himself better understood, and avoided opening a door to discussions and a contrariety of decision, that to the mind of Chancellor Kent had become exceedingly embarrassing. It is not easy to know at this distant time, whether that case presented any attending circumstances that would, on giving them a reasonable application, have explained and rebutted the presumption arising from the possession remaining with the vendor. If there were none and it rested on the naked facts of an absolute sale without a change of possession, there was no sort of necessity of deciding how far testimony of an explanatory character would be admissible, and the expression of the *(302) judge, even in explicit language that it would not have been received, was a mere obiter dtietwm, and not entitled to the authority that has been conceded to it. Whatever may have been the facts of the case, and the meaning of the judge, it seems he was understood as deciding that the possession not accompanying the deed shut out and precluded the influence of all attending circumstances from the consideration of the jury.
This opinion, though followed and adopted for a time with due and loyal submission, was not permitted to go long unimpeached. Lord Mansfield was not the man to submit a blind obedience to an arbitrary rule, that to his vigorous and well cultivated mind appeared to be a dogma, hence we find him in most emphatic language declaring that “nay the not taking possession, being the only evidence of fraud, may be explained.” 1 Barrow, 584; and Lord Eldon in Kidd v. Rawlinson, 2 Bos. and Pull. 59, declares that “possession remaining with the vendor is only prima facie evidence of fraud.” And again in 10 Ves. 145, in the case of Lady Arundale v. Phipps et al., he seems somewhat impatient at Lord Ellenborough’s having questioned his decision in the case last cited. And he reiterates the rule and says, the mere circumstance of possession of chattels, however familiar it may be to say it proves fraud, amounts to no more than that it is prima faeie evidence of property in the man possessing, until a title not fraudulent is shown under which that possession followed. The same doctrine is recognized in Watkins v. Burch, 4 Taunt. 823. In the case of Stuart v. Lamb, 1 Brod. and Bing. 506, the doctrine of possession with the vendor being fraud per se was reviewed and the adverse rule sustained. It is therefore very clear that whatever may be said of the soundness of either rule, the decision in the case of Edwards v. Harben has never been acquiesced in as correct, by the courts in England, and that the tendency of modern decisions is to multiply exceptions, and let attendant circumstances go to the jury to explain the presumption arising from the possession remaining with the vendor. We will now see how far this subject has been settled in our own country.
It will be found, by a reference to adjudicated cases, that the conflict has been fully as great with us as in the land of our forefathers. The case of Hamilton v. Russell, 1 Cranch, 319, is a leading case, and was for a time considered as settling the law, in the supreme judicial tribunal of the Union in favor of the possession remaining with the vendor, being fraud per se, and admitting of no explanatory circumstances. That case was decided at a time when the rule in Edwards v. Harben had not been so often questioned, and finally if not subverted, frittered *(303) away by so many qualifications as to cease to exert tbe energy of an established rule. It is but reasonable to suppose that the supreme court should at the time of the decision of Hamilton v. Russell have considered the question settled, and felt an unwillingness to disturb it. But it is believed from recent indications that it could not be* sustained in its full vigor at this time in that court. See Hinde’s Lessee v. Longworth, 11 Wheat. 213.
In the state of Hew York there have been greater efforts made to establish the rule in accordance with the case of Edwards v. Harben than can be found in any court on either side of the Atlantic. Eor a long time the rule was uniformly admitted that the possession remaining with the vendor was not fraud per se, but only prima facie evidence of fraud. Chancellor Kent says that it must be admitted that the current language of the courts originally was, that the nondelivery at the time of the sale or mortgage of goods was only prima facie evidence of fraud and admitted of explanation. 2 Kent Com. (2d ed.) 226; see Barrow v. Paxton, 5 Johns. 258; also 8 Johns. 446, where it is held that non-delivery of possession is only prima facie evidence of fraud; that the question of fraud depends on the motive. But in Sturdevant v. Ballard, 9 Johns. 337, Kent, then chief justice, would seem to have intended to establish a stricter rule when he says that “ a voluntary sale of chattels, with an agreement either in or out of the deed that the vendor may keep possession is, except in special cases and for special reasons, to be shown to and approved by the court fraudulent and void as against creditors.” If he intended that the judge should decide on the special reasons without any reference to the jury, he went the whole length of making it a question of law. Chief Justice Savage does not so understand him, and did not think he intended going beyond what had been the rule in the previous cases cited. It is, however, very clear that if he was in favor of making the possession under such circumstances fraud per se, he was not followed in Dickman v. Cook, 17 Johns. 332. Yates, Justice, recognizes as a general principle of law that a continued possession of goods by a vendor is prima facie evidence of fraud. The case of Bissell v. Hopkins, 3 Cow. 166, decided by Chief Justice Savage and the other judges, it is said by Chancellor Kent, entirely subverts the doctrine of Sturdevant v. Ballard, and declares that the possession remaining after sale was neither fraud- in law nor fact, but only prima facie evidence of fraud, that might be explained. This was the prevailing doctrine, notwithstanding many efforts were made to introduce into these courts the doctrine of Sturdevant v. *(304) Ballard. -No doubt, to the venerable chancellor, the question had become exceedingly vexatious. And such must ever be the result with those who attempt to fathom the motives of human action by an artificial arbitrary rule of law, instead of leaving it to the jury to judge of the intentions from the attending circumstances.
A brief history of this question in the state of New York has been presented in consequence of the prominent position she occupies and the high character of her judicial tribunals; and it has been seen that notwithstanding some feverish efforts to grasp the power from the jury and usurp on the part of the judge the province of deciding a fact, yet that these efforts have produced nothing more than a temporary interruption in the current of judicial decision without having even matured into settled practice.
In some of the states the rule has been sustained that the possession remaining with the vendor is fraud per se; such is believed to be the case in Yirginia, Pennsylvania and Kentucky. In the last named it seems to be sustained not so much from an approval of its soundness in principle as from its having been so long established. In Daniel et al. v. Morrison’s Ex’r et al. 6 Dana, 182, the consistency of the rule with either sound policy or the harmony of legal science was doubted, and it was doubted whether both principle and justice would not have been better served originally by making it onl¶ prima facie evidence, and a question of actual intent; yet it was declared to be too firmly established by authority of adjudged cases to be judicially overruled.
In South Carolina, at an early period, it was held that the possession remaining with the vendor was only prima facie evidence of fraud; it is believed, however, that a more rigorous rule was sustained in some cases, but in Maples v. Maples, 1 Rice, 309, the case of Smith v. Henry, 1 Hill, 22, in which it is supposed that the more rigorous rule had received judicial countenance was considered, and it seems to have been denied to' have had that tendency. Chancellor Duncan, in delivering the opinion of the court, says, “ It is proper to keep in mind that the case of Smith v. Henry does not proceed on the ground that the possession of -the vendor after sale of chattels is per se fraud. Such a principle, it is believed, could not be maintained.” In the state of New Hampshire, in the case of Haven v. Low, 2 N. H. 13, Woodbury, Judge, now one of the judges of the supreme court United States, says, “ that, as a general principle, fraud is a question of fact, or at the farthest, it is a mixed question of law and fact” — possession of property being retained by the vendor, *(305) after a sale, is not fraud per se, but in the language of Lord Mansfield, being only evidence of fraud, may be explained; the whole circumstances should be submitted to a jury.
In North Carolina, in Smith & Stanley v. Neil et al. 1 Hawks, 341, it was held that it was not of itself a fraud, and that it was a question that properly and rightfully belonged to the jury. In Massachusetts the same doctrine was held in Brooks v. Powers, 15 Mass. 244.
The same doctrine now obtains in Tennessee, although it was formerly otherwise. Callen v. Thompson, 3 Yerg. 475. In the state of Alabama, the leading case on this question is that of Hobbs v. Bibb, 2 Stuart, 54. On much consideration it was settled on principle and authority that the possession remaining with the vendor after sale is prima facie fraudulent as to creditors, but that it may be explained. It was so ruled by a court of five judges sitting, unanimously. The court, when full, would have been composed of seven judges, but Taylor, Judge, did not sit, having been of counsel; and Saffold, Judge, did not sit, having been the presiding judge in the court below.. The case of Ayers v. Moore, same book, 350, all of the seven judges sitting excepting Crenshaw, Judge, who presided on the trial in the court below; and the doctrine of Hobbs v. Bibb was recognized by all of the judges, and concurred in, excepting Saffold, Judge. In these two eases the court was not influenced by the case of Bissell v. Hopkins, 3 Cow. 166, before, cited, and no reference is found to it in the opinion of the court. When the case of Hobbs v. Bibb was decided, neither the counsel nor any one of the judges had seen the case of Bissell v. Hopkins. It was used as authority in the argument of the case Ayers v. Moore; but the decision of the case was put on the anthority of the first case, Hobbs v. Bibb. The judge is, therefore, mistaken in saying in Miller v. Thompson, 3 Porter, 196, that the two cases of Hobbs v. Bibb and. Ayers v. Moore were influenced by Bissell v. Hopkins. The doctrine-of fraud perse has never been sustained in the supreme court Alabama, but by the dissenting judge.
The object of tracing the course of judicial decision on this ques-tion has been to show that there has been a great diversity of opinion, among jurists; that it can by no means be said to be firmly settled. It will be seen that as far as authority of adjudged cases go that the preponderance is decidedly against making the possession remaining-' with the vendor fraud per se. It has been seen that the case-of' Edwards v. Harben, near two centuries from the passage of the act, is-the first in which that doctrine was advanced. We have shown that that case was not sustained by the rules laid down in.Twyne’s-case,- *(306) and that it never did obtain, general currency in the English courts. We are therefore able to meet this question untrammeled by the authority of adjudged cases and at liberty to dispose of it on principle. The question then for our consideration is, whether under our statute of frauds the vendor remaining in possession after an absolute sale is fraud per se or only a presumption of a fraudulent intent. It has been before said that the statute of 13 Elizabeth is not materially different from our own; a fair construction of one would be equally applicable to the other. The English statute, it has been seen, received a construction in Twyne’s case. If the rules laid down in that ease are good, and result from a fair construction of the language of the statute, there can be no objection to adopting them. It must be borne in mind that the object sought to be ascertained in that case was whether the sale called in the language of that day a gift'was fraudulent as to creditors; and the judges take up aud analyze the circumstances that surround the transaction. They say “the gift was secret,” and they rule that secrecy “is a badge of fraud.” In the absence of any rule of law, what is the conclusion that would be drawn from a secret sale? Would we not readily draw the conclusion that fraud of some sort was the motive? That conclusion would be what the law calls presumption of frand. Common, sense, without the aid ,of any rule of law, would sanction it bec.ause it is a rule of reason. Another rule laid down in that case is, “ that the possession remaining with the donor and he using the property as his own,” is a badge of fraud. Test this rule by the same process of reasoning; would not the conclusion be that the property belonged to the person so being in possession and using it as his own? Undoubtedly that would be tire conclusion to which every well organized mind would arrive. Because in common affairs the first idea of ownership is derived from possession. ‘When, then, you are told that the possessor was indebted rand had made a secret sale of that property he yet held in possession, using it as his own, you would at once suspect frand as the motive; .because one is not in the habit of paying for property and allowing the vendor to derive all the benefit of the use of (be thing purchased. Sneh departure from the ordinary rule that governs our conduct in these cases induces a well grounded suspicion. The law comes to the same conclusion by the same process of reasoning. These suspicions are not, however, positive proof, and from what the law calls a presumption of the truth of the conclusion of evil intent or fraudulent motive, our law would make the sale void if made “ to the intent or purpose to delay, hinder or defraud.” The legal effect then of the possession remaining with the vendor would be a presumptive or *(307) prima facie conclusion that it was fraudulent and therefore void. Such is the law in a case standing on the naked facts- of a claim by the vendor of property, remaining in the possession of a vendor, unaccompanied by any other circumstances to rebut such presumption. Presumptions, in the language of the law, are such conclusions as may be reasonably inferred from admissible facts offered in evidence. As to the admissibility of those facts the judge must determine under what is called rules of evidence known to the law; but it would be equally appropriate to call them rules of reason, because it is by such reasoning the mind is brought to a conclusion in the ordinary transactions of life; and such presumption would he sufficient in law if it remained unexplained by other testimony. This would seem to be the utmost extent to which the tendency of all the rules in Twyne’s case would lead us in ascertaining whether the sale was made with a fraudulent intent. "We cannot perceive that any of the rules there laid down authorize the conclusion that a presumption raised from any of the enumerated badges of fraud would he of such force and effect to make the transaction fraud per se, and by an arbitrary rule of law, shut out and exclude evidence of the attendant circumstances to explain and rebut the presumption. All presumptions are from their very terms imperfect evidence, and it will not be denied that they invite further proof for confirming, rebutting or weakening them. We can see no reason why a presumption of fraud should be made an exception; with the same propriety could the judge say to the prisoner on trial, the prosecution has raised the presumption of guilt, he has proved the homicide to have been committed by you, I will hear no explanatory evidence; for on such fact being proven the presumption is murder per se. In both cases the fact has been proven and established on rules of sound reason, and the legal effect in producing conviction would be the same in both cases. In both the fact sought to be established would, in the absence of all explanatory circumstances, be proven. It is singular indeed if such an artificial distinction should exist in our law that in the one solitary case of fraud that presumption should be full proof, sternly rejecting and closing the door to all proof that would explain the transaction and show that it was really and in truth not what presumption would make it appear; but an attempt is made to evade the well-established laws of evidence by assuming that on the fact appearing of the vendor remaining in possession, when the rights of creditors are concerned, the law makes it fraud, and not presumption. How a reference to the statute will show that not a word is said about the possession remaining with the vendor, nor is any such construction *(308) claimed for it in Twyné’s case; and it is by judicial legislation alone that any one named fact, except intention, will make of itself fraud; if the intention is fraudulent, it is not material by what array of plausible pretexts it may be surrounded.
In establishing the rules they have closed their eyes to the language of the statute and assumed a meaning for it with as little reason as for anything else that they might have imagined would have been more effectual in preventing fraudulent conveyances. They have lost sight of the word intent, and sued upon and detached from its proper connection, the word fraud, as being more equivocal and better suiting their purposes than when taken in connection with the preceding part of the sentence, and assumed that fraud is a question of law for the decision of the judge without the unpleasant incumbrance of a jury to pass on the motion. Without discussing the propriety of dropping the word intent in construing the statute, it may be remarked that it is certainly a novplty to give a meaning to the word fraud without associating the motive with it, it would seem to be as difficult as to establish an effect without a cause. It would however have been too bold a strike in grasping at jurisdiction to have said, that the intention was not a fact to be inquired of by the jury. How intention is the gist of the -inquiry, when adjudicating on the acts of men; it is so in contracts, it is so in the trial of offenses, why should it not be so in any inquii’y. into fraud or no fraud?
To construe one statute of frauds,by the same rules applied in general to such acts, it would seem to b^jmpossible to sustain the opinion that the fact of possession remaining with the vendor is fraud per se. We have shown that when it stands upon these naked facts, that fraud would be the reasonable presumption, and in such cases would he fraudulent as to creditors and purchasers without notice. But this presumption like all others may admit of explanation by which it would appear perfectly honest and free from the slightest taint of fraud. If there are any such attendant circumstances, they ought to he allowed to go the jury to rehut the presumption of fraudulent intent. It may happen, that a man indebted may not be able to pay his debt without the sale of property, which from long and familiar use suits him better than any other would. He may be able to pay hire for it, although not able to avoid the necessity of selling it. This may happen and no doubt often does in the case of the sale of confidential family servants. How if the purchaser had no particular use for such property and was content to receive the hire, there certainly would be no immorality in the transaction, if he hired such property to the vendor. To be sure, if it was proven that this hiring *(309) was only colorable, so far from rebutting the presumption of fraud, it would strengthen it. The payment of an adequate price for the property would be a circumstance to weaken the presumption, while on the other hand, if it was nothing more than what would in law be considered a valuable consideration, it would not remove it, because great disproportion between the price paid and the value creates a presumption of fraud. In applying the principles discussed to the case before us, we come to the conclusion that the judge did not err in refusing to charge the jury, that possession remaining with the vendor after the sale was fraudulent per se. But in giving the charge that any valuable consideration was sufficient to remove the presumption, we believe the judge erred. The last clause in the charge, “ that a precedent indebtedness or advances ” might be considered as making part of the consideration, we do not consider objectionable, although the bill of sale expressed so much money then paid. The taking in and extinguishing a previous liability might well have constituted a part of the consideration expressed in the deed, but that precedent debt should be shown to be arising on a fair and bona ficle transaction.
The plaintiff in the court below asked for a new trial on the ground that the verdict was contrary to evidence, which was overruled. The jury found that the deceased, Robert Helton, was not indebted to the plaintiff at the time of the sale of O. P. Ilelton. The only evidence offered was that the claim of debt had been presented to the administrator, had been allowed by him and had been approved and audited by the probate judge of Montgomery county. This was admitted by the answer and was therefore in proof without the production of any other testimony. This evidence produced a presumption we think of indebtedness. The only evidence offered by the claimant to rebut this indebtedness was the declaration of the plaintiff that he had collected money for Robert Helton, but that he would hold it to pay himself. This is too vague and uncertain to amount to anything. "We dislike to review a judgment on the ground that the jury found against the weight of evidence, but it appears to us that the evidence against the indebtedness amounted to so little if to anything, that the finding of the jury was contrary to evidence. If we had been satisfied with the verdict, we would not have reversed the judgment, although the judge erred in his charge, because it was in the character of creditor only that the plaintiff bad a right to dispute the claimant’s title. Because then, there is error in the charge of the judge, that any valuable consideration was sufficient to rebut the presumption of fraud, and hence there is error in refusing a new trial, the judgment is reversed and the cause remanded.