SOLOMON VAN HOOK v. JESSE S. WALTON ET AL.

Where the suit was against the sheriff and his securities for an illegal levy upon goods, which were claimed by the plaintiff as assignee under a deed of trust, and the defendants plead that the assignment for the benefit of the creditors, which was not defective in any of the qualities essential to the validity of every conveyance, was fraudulent, because made to hinder and delay the plaintiff in execution, it was error for the court to withdraw its consideration from the jury, and to charge that it were void as to previous creditors for fraudulent intent, unless that intent was expressed or admitted, or unless the deed reserved to the assignor some interest or benefit inconsistent with its object.

If the fraudulent intent were to be deduced from facts and circumstances, which in legal contemplation were mere badges of fraud and not fraud *per se*, such facts and circumstances should have been submitted to the jury, so that they might have drawn their own inferences as to the fairness or the fraudulent character of the transaction. (See Paschal's Dig., Art. 3876, Note 906.)

The delivery of a deed may be established by circumstances as well as by direct proof; and when it is sought to be proved by circumstantial evidence, the court should submit the circumstances with proper instructions to the jury for their finding upon the question.

Actual notice to a creditor or his attorney of an assignment preferring other creditors is equivalent to registration. Whether the creditor or his attorney had such actual notice, is a question for the jury to determine from the evidence.

Possession by the assignor of the property assigned, when the deed is absolute, is *prima facie* evidence of fraud, which, if not explained away, will render the assignment void as to the creditors. But such possession is merely a badge of fraud, and not fraud *per se*, and facts explanatory of it should be allowed to go to the jury.

The employment by the trustee of the assignor as a clerk in the execution of the trust is not of itself sufficient to prove fraud in the assignment. But the law looks upon this relation with distrust, and the employment must be actual, not merely nominal, and must be held in strict subordination to the trustee.

It is not absolutely essential that the exact amount of each debt secured by an assignment should be set forth in it. (See the opinion with reference to this particular.)

The assignment in this case provided for the payment of all of the assignor's indebtedness to the trustee, whether "due or to grow due," and the amount of such indebtedness was not stated. *Held:* that the expression quoted was to be construed as providing only for existing liabilities, whether matured or to mature, and as not covering future transactions between the parties, and that, in view of this construction and of the context of the assignment, this provision did not vitiate the conveyance. (See the opinion *in extenso* with regard to the several questions above indicated, arising upon assignments and deeds of trust.)

To the well-settled rule, that a debtor in failing circumstances may dispose of his property in trust for the benefit of his creditors, giving a preference in payment to one creditor over another, the only qualifications are, that the assignment must be *bona fide* and upon good consideration, and that it be not prohibited by any bankrupt law or other statute.

The act of January 19, 1841, known as the bankrupt law, considered, and the conclusion deduced, that an assignment made by a debtor in failing circumstances, preferring certain of his creditors to the rest, is not in contravention of that enactment. *Quære,* whether the act in question is still in force? (See Paschal's Dig., Art. 215, Note 278; Hartley's Dig., Art. 1591; O. & W. Dig., Art. 73.)

APPEAL from Navarro. The case was tried before Hon. JOHN GREGG, one of the district judges.

This was an action brought by the appellant, as trustee of J. H. Kirchhoffer, to recover of Walton, sheriff of Navarro county, and sureties on his official bond, the value of certain goods, wares, and merchandise, which had been conveyed by Kirchhoffer to the plaintiff in trust for creditors, and which had been taken in execution by the said sheriff and sold. The petition was filed May 5, 1857, and laid the plaintiff's damages at $10,000.

The assignment or deed in trust was made by Kirchhoffer to Van Hook, on the 1st of February, 1856, and conveyed to the latter a stock of goods in Corsicana,

Navarro county, valued at $8,000. The trusts were, that Van Hook should take possession of the goods, and sell and dispose of them according to the best of his judgment, and convert them into cash, with which he should first discharge all expenses, costs, &c., attending the trust; secondly, should "pay and discharge in full the several and respective debts, notes, bonds, obligations, and sums of money due or to grow due from said Kirchhoffer to said Van Hook, and to the several other persons and firms specified in the schedule hereto annexed, and marked schedule B, together with the interest due or to grow due thereon, and if the said proceeds shall not be sufficient to pay and discharge the same in full, then such proceeds shall be distributed *pro rata* among the said several persons and firms named in the said schedule B in proportion to their respective claims; thirdly, to pay and discharge all the other debts, demands, and liabilities, now due or to become due, of the said firm of Kirchhoffer & Woodward, and from myself individually, provided there be sufficient funds for that purpose, and, if not, then the same shall be applied *pro rata* to the payment of said debts, demands, and liabilities in proportion to their respective amounts; lastly, to return the full surplus of the said proceeds, if any there be, to said Kirchhoffer, his heirs," &c.

Schedule B, appended to this assignment, contained the names of sundry persons and firms, creditors of the assignor, and the amounts respectively due or to become due to them, amounting to the sum of $6,675; but the name of Van Hook does not appear in the schedule, nor does the name of L. Edgerton & Doane.

The defendants excepted generally, but did not question the right to join the sureties for a trespass, and plead, 1st, that the assignment was fraudulent and void as to creditors; 2d, that the defendant, Walton, as sheriff of Navarro county, took the goods, &c., by virtue of an execution issued from the District Court of Galveston county against

said Kirchhoffer and one Woodward, upon a judgment against them for some $4,200 in favor of L. Edgerton and others, partners under the style of Edgerton & Doane; 3d, that at the time of the levy of said execution, the assignment had not been recorded in Navarro county, nor did these defendants, nor either of them, have notice of it at that time; 4th, that the said Edgerton & Doane, plaintiffs in the execution, had no notice of the assignment; 5th, that the said assignment was made to hinder, delay, and defraud the plaintiffs in said execution, and was void as to them; 6th, that the said Van Hook and Kirchhoffer combined and confederated for the purpose of hindering, &c., the plaintiffs in said execution in the collection of their debt, and that Kirchhoffer fraudulently, and with such intent, executed the assignment to Van Hook in favor of fictitious creditors, mentioned in schedule B, when, in fact, Kirchhoffer was not indebted to them as represented.

The plaintiff, by amended petition, (by way of replication,) represented that, after the making of the assignment, he, as trustee, employed the said Kirchhoffer as a clerk and salesman, and, by reason thereof, the said Kirchhoffer remained in the store and transacted the business of selling, collecting, book-keeping, &c., as such clerk, and that such was the character of the said Kirchhoffer's possession of the goods, &c., at the time they were levied upon, was well known to the defendant, Walton, and to the plaintiffs in execution, at the time and long before the levy was made.

The plaintiff also filed special exceptions to the answers of the defendants.

At the fall term, 1858, the several persons constituting the firm of Edgerton & Doane, plaintiffs in execution, became parties defendant, and adopted the pleadings of their co-defendants, by a paper which they filed, but not by any order of the court.

At the same term the cause came to trial. The plaintiff introduced in evidence the deed of assignment, which,

though dated February 1, 1856, was not filed for record until September 4, of the same year. The defendants admitted the seizure and sale of the goods by the defendant, Walton, as sheriff, under the execution from Galveston District Court against Kirchhoffer. The levy of this execution was made on September 3, 1856, the day next previous to the filing for record of the deed of assignment. The plaintiff, however, proved by the attorney of Edgerton & Doane, plaintiffs in the execution, that he, their attorney, knew by rumor, before the levy, of the execution of the assignment by Kirchhoffer to Van Hook, the plaintiff. It was also proved by the plaintiff that the defendant, Walton, was present when the assignment was executed. When the levy was made, Kirchhoffer was ostensibly in possession of the goods, &c., disposing of them; but the plaintiff introduced several witnesses, from whose testimony it appeared that, after the making of the assignment, he employed Kirchhoffer, as a clerk, to conduct the business, until the trusts were fulfilled; that Kirchhoffer's custody of the goods and connection with the business was thenceforward simply as clerk of the plaintiff, and that this fact was not concealed, nor was there any secrecy maintained on the subject. The only charge given by the court below is quoted at length in the opinion of this court, and the errors relied on are also sufficiently indicated therein.

There were verdict and judgment below for the defendants, and a new trial refused.

*D. M. Prendergast*, for appellant.—I. The charge of the court cannot be sustained, except upon the ground that the deed of trust was inoperative for want of registration; or that it was void as being against law.

As to the first point, notice of the deed is sufficient to render it operative, as to the party having such notice, without registration. (Crosby v. Huston, 1 Tex., 237, *et seq.;* Givins v. Taylor, Hart & Co., 6 Tex., 318–321.) And

notice to the attorney would be as effectual as notice to the party principal. (Case last cited, and see also Jackson v. Sharp, 9 Johns., 166; Sug. on Ven., part II, 278.)

The deed of trust would not be void by the mere fact of a preference being given to certain creditors. (Edrington v. Rogers, 15 Tex., 195; Brashear v. West *et al.*, 7 Peters, 608.) Even if the debtor had been insolvent, and had transferred all his property for the benefit of particular creditors, (which, however, was not the case in this instance,) still the deed would not have been void. (Tompkins v. Wheeler, 16 Peters, 118.) This case is directly in point. (See also case of Brashear v. West *et al.*, above cited.) The description of the property was sufficient. (Burrill on Assign., 240; Lynn v. Wright, 18 Tex., 339.) But no objection was made on this ground in the lower court.

The provisions of our bankrupt act and the English law on the subject are very different. Under the English law, upon the commission of certain acts, the debtor became a bankrupt, and the law took possession of his property and disposed of it, through commissioners in bankruptcy, for the benefit of his creditors. It required no appeal to the court, on the part of the debtor, under this law, to put it in motion. This law was designed for the protection and benefit of the creditor, and not of the debtor. (Bac. Ab. tit. Bankrupt.) On the contrary, our law is designed for the benefit and protection of the debtor who may choose to avail himself of its provisions. Under this law there is no such thing known as an act of bankruptcy. The creditor can do nothing until the debtor chooses to move in the matter. It is a privilege given to the debtor, of which he can avail himself or not, just as he chooses. Under the English law it might be well held, that such an instrument as the deed of trust in this case was in contravention of its provisions, but I cannot see how the same doctrine can be made to apply to our act.

II. The court erred in not submitting to the consideration of the jury the deed of trust and the issues and proof in relation thereto.

The court could not presume that the deed was fraudulent, or made to hinder and delay Edgerton & Doane in the collection of their debt. These were questions peculiarly within the province of the jury. Fraud cannot be presumed, but "must be proved actually, or be a conclusion from facts that will not admit of any other conclusion consistently with fair dealing;" "until it is proved, the presumption is in favor of the fairness of the transaction." (Tompkins v. Bennett's Administrator, 3 Tex., 47; Turner v. Lambeth, 2 Tex., 369.) It cannot, with the least show of reason, and I suppose will not be insisted, that this is a case where the facts are all on the side of the defendants, and are so free of doubt or controversy as to authorize the judge to withdraw the matter, in effect, from the consideration of the jury.

*J. W. Ferris,* also for appellant.—The charge can only be supported upon the hypothesis, that a debtor cannot make provision for payment of part of his creditors without providing for all.

That a debtor can prefer his creditors, is too well settled by all the authorities to admit of serious controversy, and it is unnecessary to cite the long list of authorities on this point. The only question which can arise is, does our bankrupt law change this rule; or, in other words, was the assignment in this case made in fraud of the bankrupt law?

Though the bankrupt law has been regarded as obsolete and inoperative, yet, if considered in full force, we think it clearly does not affect the general rule in regard to assignments. Under this law, to go into bankruptcy is voluntary, and no creditor can force a debtor into bankruptcy, as under the old laws on this subject.

The first section defines its object: "Any citizen desiring to yield his or her estate for the satisfaction of creditors, and obtain exoneration from existing debts, &c., may do so by observing the following rules," &c.   (O. & W. Dig., 46.)   It is simply a law providing a mode by which a debtor can be exonerated from his debts.   If the law is not complied with, there is no exoneration from full liability.

In this case Kirchhoffer desires no exoneration from his debts.   He expected, and still expects, to pay every debt he owes.   By the deed of assignment, he made provision for the payment of certain debts, which did not embrace Edgerton & Doane, only preferring some creditors to others. There was no attempt at exoneration from liability to any and all his creditors.   And it seems strange to us how the court below could have regarded the transaction as affected by the bankrupt act, to which Kirchhoffer was not appealing, and which was made manifestly for the benefit of the debtor, and only incidentally for the benefit of the creditor.

The deed of assignment could only be attacked on the ground of fraud, and this was a question for the jury.   It was manifest error in the court to answer that there was fraud, and charge the jury to find for defendants.

It may be gathered from the whole case, and particularly from the argument of the counsel, and facts known to the *Reporter*, that the error of Judge GREGG arose out of his belief that the repealed bankrupt act of Texas controlled the case.   He turned the case upon rules 1 and 2 of sec. 1 of the act concerning a system of bankruptcy, which reads as follows: "Any citizen of this republic, or resident therein, if a male, being twenty-one years old, or, if a *feme sole*, being eighteen years old or over, desiring to yield his or her estate for the satisfaction of creditors, and obtain exoneration from existing debts and pecuniary liabilities, may do so [in] observance of the following rules:

"First. He or she may present his or her petition to the

chief justice of the county of his or her residence, stating, as nearly as recollected, the names and additions of his or her creditors, and sums payable to them, (which statement shall not avail as an admission of the validity or amount thereof,) and praying the benefit of this act; thereon shall be an oath or affirmation, signed by the petitioner, and to be taken before the said judge, in these words: I, ———, swear (or affirm) that my preceding petition is preferred in good faith, in order to a just transfer of my estate to my creditors; that I have not aliened, given, lent, leased, encumbered, covered, or secreted any of my estates, real, mixed, or personal, or in possession, expectancy, or action, with intent to delay, defeat, or defraud my creditors; that there is not in the possession of any person or persons, natural or conventional, and known to me, any of my estate on secret or collusive trust, condition, or contingency, directly or indirectly, for my present or future benefit; and that the deed of transfer, now executed to my trustees in bankruptcy, contains a full exhibition of all such of my estate as now known to or remembered by me. If this be false when taken, the petitioner shall be subject to prosecution and punishment for perjury." (Hart. Dig., Arts. 91, 92.)

[Having thus mistaken the application of this law, or having fallen into the erroneous belief that it was still in force, he did not consider the case upon the act "to prevent frauds and fraudulent conveyances." (Paschal's Dig., Arts. 3876, clause 1, and 3877, Notes 906 and 910.) The Supreme Court seems to have considered the case upon this statute *alone,* the record not clearly showing the reason for Judge GREGG's decision. The *Reporter* has thought this note due to the memory of Judge GREGG.]

*Walker*, *Mills*, and *Winkler*, for the appellees.—The charge of the court was right.

1. The deed of trust from Kirchhoffer to Van Hook, in

contemplation of insolvency, is in violation of the bankrupt law of the State, and consequently void. And that Kirchhoffer did contemplate insolvency, and became so, is shown by the language in the first part of the deed, in substance, that he was largely indebted, and unable to pay his debts.

A debtor going into insolvency cannot give a preference to one creditor over others, where there is a bankrupt law, for they are enacted upon principles of equality among creditors. (Harrison v. Sterry, 5 Cranch, 301; Lock v. Winning, 3 Mass., 325; Barnes v. Billington, 1 Wash. C. C., 29; Ogden v. Jackson, 1 Johns., 370; 2 Kent Com., 532; 2 Johns., 307; Id., 529.

Counsel for appellant has discussed the English law of bankruptcy, and drawn distinctions between that system and ours. None of the decisions to which I refer the court were made under the English law of bankruptcy, but under the laws of the United States, which are substantially the same as our law. There is a striking similarity between the bankrupt law of the United States of 1841 and our State law. They both provide, that any party wishing to become a bankrupt shall file his petition for that purpose; both require notice to be given; both require a list of the creditors to accompany the petition; both require petition to be sworn to; both require a *pro rata* distribution; both forbid a preference of one creditor over another; both require a deed of insolvent effects to be made to "trustees" or "assignees." The very object of a bankrupt law, and its chief characteristic, is "equality among creditors." And this is the ground upon which all the decisions have been made, forbidding a preference, whether English or American, and I suppose it can make no difference as to the general detail of the law, or as to the differences in the several laws in other minor points. The main question is, have we a bankrupt law in form? It is contended in the court below that the law was obso-

lete; but this argument is not tenable, for this court has recognized its vitality and binding force, by adjudicating cases arising under it. (Biers & Smith v. Rhea, 5 Tex., 349; Smith v. Talbot, 18 Tex., 774.)

2. The assignment to Van Hook, in trust, &c., is inoperative, as against the deferred creditors, Edgerton, Doane & Co., because it was not recorded until after the levy of execution under appellees' judgment. The statute (O. & W. Dig., Art. 1730) declares, that such an instrument shall take effect, "as to all creditors," from the time when such instrument is delivered to the clerk, properly authenticated, to be recorded, "and from that time only." This section clearly makes a difference between subsequent purchasers and creditors, for the deed only takes effect against subsequent purchasers for a valuable consideration without notice; but as to creditors with or without notice, from the time of its presentation for registry, "and from that time only." (2 Bibb., 420; 2 Litt., 79; 9 Dana, 77; 2 Humph., 115; 5 Id., 26; Id., 352; 10 Yerg., 146; Mart. & Yerg., 391; Gray v. Moseby, 2 Mumf., 545; Rice v. Gray, 6 B. Monr., 358; 4 Monr., 120; 9 Dana, 69; Litt. Sel. Cas., 358.) And in aid of the construction here contended for, particular reference is made to art. 1729 of same statute. And the attention of the court is particularly directed to the case of Lillard v. Rucker, 9 Yerg., 64, and also 4 Rand., 208, where the statutes under which they were decided are very similar to our own.

The statute of 1841 (O. & W. Dig., 1731) was plainly intended to apply to subsequent purchasers and subsequent creditors. It had no reference to prior or existing creditors at the time of making the deed. And by thus construing this article both statutes can stand. Otherwise, the statute of 1841 must be construed to repeal that of 1840, by implicating a construction not favored in law.

In an assignment for the benefit of particular creditors, it would seem that the reasons for requiring a specification

of the property conveyed would equally apply for requiring (with the same strictness) a specification of the amounts of the several debts preferred, in order that the general creditors might compel the trustee to a due performance of his duty. The schedule B annexed to this deed is very indefinite, and if, as one of the witnesses for plaintiff stated, Kirchhoffer "was a man of fine business capacity as a merchant," it is strange and suspicious that he did not resort to his ledger for a more definite description of the debts preferred: the character of the obligations not stated when given, and when due not stated, and the amounts of most of the debts are qualified with the terms "more or less," and the debt to Van Hook not stated at all. (Burrill, 258–259; Averill v. Loucks, 6 Barbour's S. C., 470.)

It seems clear, that the amount of the liability of the assignee in this case is impossible to be determined by the deed and schedule B; and if so, the remark of our present chief justice (in the case of Linn v. Wright, 16 Tex., 339, 340) will equally apply in this case, "so that it might certainly appear for what the assignee is responsible." The court, it would seem, might well have sustained the motion of the appellees, to exclude the assignment from the consideration of the jury. The deferred creditors "ought not to be bound by any assignment which was effected in such a manner as not to enable them to hold the assignee or trustee responsible for all the property conveyed, or as to needlessly embarrass their remedy against him in case of his delinquency, or which in any manner concealed the real transaction, and rendered it, in any of its parts, not readily accessible to their observation and the eye of the court in case of the necessity of a resort to a legal process for the protection of their rights." (Linn v. Wright, 16 Tex., 340.)

Tested by the above rules, we think the assignment clearly void.

WILLIE, J.—The assignment of errors presents several grounds upon which it is sought to reverse the judgment of the court below, but, in the view which we take of the case, it becomes necessary to notice only two of them, viz: 1st, that the court erred in its charge to the jury; and, 2d, that it erred in not submitting to their consideration the trust deed and issues and proof in relation thereto. These two assignments may be considered together, as they involve the correctness of the only charge given by the court. This charge is as follows: "That if they" (the jury) "are satisfied, from the testimony, that Edgerton & Doane, at the time of the execution of the deed of trust, were creditors of Kirchhoffer & Woodward, and had a subsisting debt against this firm, for which the judgment in favor of Edgerton & Doane was rendered, the deed of trust is such an instrument as is not valid, and they will find for the defendants." The deed was in form an assignment in trust for the benefit of creditors, in which some were preferred and others postponed; and to instruct the jury that it was invalid, as to previous creditors, was error, unless it was executed with fraudulent intent, or in contravention of some statute expressly or impliedly prohibiting such conveyances.

Mr. Justice ROBERTS, in Baldwin v. Peet, 22 Tex., 714, held that our courts do not possess a power, similar to that of courts of equity, of finding one material fact, that is not admitted, by inference from those that are admitted; and hence, that the court below had no right to infer that the deed in that case was made with fraudulent intent, from certain badges of fraud established in reference thereto. He goes on further to say, that the court may pass upon the validity of a general assignment, and declare it void or inoperative as to creditors—1st, when the fraudulent intent is expressed or admitted; 2d, when it contains a reservation of an interest, advantage, or benefit to the assignor, inconsistent with the object of the conveyance; 3d, when

the deed is wanting in some of the qualities, which, when wanting in any deed, render it inoperative and invalid as a legal conveyance of property.

Admitting, then, that the assignment is not wanting in any of the essential qualities, without which no conveyance is good, the court was not authorized to withdraw its consideration from the jury, and charge that it was void as to previous creditors for fraudulent intent, unless that intent was expressed or admitted, or unless the deed reserved some interest, advantage, or benefit to the assignor, inconsistent with the object of the conveyance. If fraudulent intent was only to be deduced from facts and circumstances, which the law considers as mere badges of fraud, and not fraud *per se*, these should have been submitted to the jury, so that they might have drawn their own inferences as to the fairness or fraudulent character of the transaction. It is not contended that fraud is either expressed or admitted in the execution of this assignment, nor can it be said that it reserves an interest, advantage, or benefit to the assignor, inconsistent with the object of the conveyance. The only interest reserved is in the surplus, after all the expenses of the trust, and all the debts of the assignors, have been paid. This is not improper or fraudulent, for it is no more than the law itself would imply. (Burr. on Assign., 178.)

The circumstances from which, it is alleged, the court was authorized to declare the assignment in this case void are, that it was never delivered or recorded until two days after the levy; that the property conveyed by it was never delivered to the assignee; that the assignor continued in possession of the property under a pretended employment as clerk for the trustee; that the schedule of debts is not sufficiently explicit; that the deed provides for the payment of a debt due the trustee, the amount of which is not stated in the deed or schedule.

If the deed were not delivered, of course it was not oper-

ative.   Delivery, however, is not always a fact that can be proved by direct evidence.  It is sometimes a conclusion from other circumstances, and the court should have left the jury to draw their own inference on this subject under a proper instruction.  The deed does not appear to have been filed for record until the next day after the levy, but there were facts proved which tended to show actual notice of its contents to the defendant, Walton, and the attorney of Edgerton & Doane.  But it is said in argument that actual notice will not supply the place of registration, and render such an instrument valid as to prior creditors.  This is not now an open question in this court.  The same point was raised in the case of Givens v. Taylor, Hart & Co., 6 Tex., 315, and the court held, that notice of a similar instrument to the attorney of a previous creditor supplied the want of registration.  The attorney in that case was the person who made the affidavit for the attachment; in this, he was the party who indemnified the sheriff and had the levy made.  Again, in Bennett v. Cocks, the court sustained an unrecorded deed against a previous creditor with reasonable information of its contents.  (15 Tex., 67.) The court, therefore, should not have declared the deed void for want of being registered before the levy, but should have submitted to the jury the proof introduced as to actual notice.

The next circumstance is, that possession of the property was not delivered to the trustee.  The predominant rule on this subject, and the one established in Texas, is, that possession by the assignor, where the deed is absolute, is *prima facie* evidence of fraud, which, if not explained away, makes the deed void as to creditors.  (Bryant v. Kelton, 1 Tex., 415;  Earle v. Thomas, 14 Tex., 592;  24 Tex., 61.) But it may be explained, being a mere badge of fraud, and not fraud *per se*, and the facts in reference to it should be submitted to the jury.

The employment of the assignor as a clerk would not of

itself be evidence of an original intent to defraud creditors. (Burr. on Assign., 431.) His employment might be necessary to a due execution of the trust. Under his general power of appointing clerks, the assignee may appoint the assignor, paying him suitable wages. But the appointment must be actual, not nominal, and held in strict subordination to the trustee, for the law looks upon this relation with distrust. (Id., 430–431.)

It is not absolutely essential that the exact amount of each debt intended to be secured by the deed of trust should be set forth. It has been held, that a debt intended to be secured may be described by the name of the creditor, and the amount left to be ascertained. (Layson v. Rowan, 7 Rob., 1.) It is important to the creditor that his debt should be so described as to be identified, but it will not vitiate the deed itself; at least it will not be sufficient to authorize the court to declare it fraudulent. (Burr. on Assign., 251–252.)

For this reason we might also dispose of the ground taken, that the assignment provides for the payment of a debt due or to grow due to the trustee, the amount of which is not stated. Appellee contends, in his argument, that this expression would cover all future transactions between the assignor and assignee, wherein the former might become indebted to the latter. It is said by Mr. Burrill, in his work on Assignments, p. 71, that they may be made for the benefit of persons who may incur liabilities for the assignor at a future period in the shape of advances, suretyships, and the like; and in accordance with this doctrine was the decision of Hendricks v. Robinson, 2 Johns. Ch., 283. But, in the subsequent case of Barrow v. Hempstead, 7 Paige Ch., 568, the rule was limited so as not to extend to providing security for future advances by general assignments, especially when preferences are by this means given. In this latter case the assignment was, first, to pay expenses, and next to pay one of the assignees such sums

of money as should from time to time be due to him from assignors, and all such sums of money as he then was, or should thereafter become, liable to pay, or should pay, on account of the assignors, as indorser or otherwise. The chancellor construed this clause to mean the moneys that the assignee might thereafter pay, or become liable to pay, by reason of indorsements, or other contingent responsibilities, which he had already made or incurred on their account.

The language of the deed now under consideration is much more susceptible of a construction which will make it apply alone to the present indebtedness of the assignor to the assignee than was the language used in the New York case. The expression is, "the several and respective debts, notes, bonds, obligations and sums of money due, or to grow due, from said Kirchhoffer to said Van Hook,". &c. The words "to grow due" might well be construed as synonymous with the expression "to become due" or "to mature," and in fact are hardly capable of any other construction. And when we take into consideration the fact, that the same language is used in reference to the debts mentioned in the schedule attached, and that some of these debts are due, and some are to mature in the future, but all existed at the date of the deed of trust, we can come to no other conclusion, than that the words "due and to grow due" were to include all his subsisting liabilities to Van Hook and the other parties named, as well those which were already due as those which had not arrived at maturity.

We conclude, therefore, that the assignment was not vitiated by any circumstances that amount to fraud *per se.* If attended only with what are known as *indicia* or badges of fraud, these should have been submitted to the jury, in order that they might draw therefrom their own conclusions as to whether or not they established such fraudulent intent as would invalidate the deed.

But it is further insisted, that the assignment is in contravention of the law of January 19, 1841, known as the bankrupt law, that it was made in contemplation of bankruptcy, and was void, because, under such circumstances, it preferred some creditors and postponed others. That a debtor in failing circumstances may dispose of his property in trust for the use and benefit of his creditors, giving a a preference in payment to one creditor over another, is a well-settled principle of American and English law. The only qualifications to which this rule is subject are, that the assignment shall be *bona fide*, and on good consideration, and not prohibited by any bankrupt law or other statute. (1 Amer. Lead. Cas., 95; 2 Kent's Com., 532.) It is not contended that we had, at the time of the execution of this instrument, any law expressly forbidding such assignment, unless made with intent to hinder, delay, or defraud creditors. The bankrupt law of 1841 contains no express inhibition of them, and, if invalid at all by reason of that act, it must be because they are in opposition to the spirit and intention of the same. This point has been frequently submitted to the Supreme Court, but has never been expressly decided by them, as it was not a necessary and controlling question in any of the cases where it was raised. They have, however, held on several occasions that assignments in trust, giving preference to certain creditors before others, were valid, if not within the statute of frauds; and we should be loth to disturb the harmony of these decisions, and interfere with the rights that have grown up under them, unless satisfied beyond a reasonable doubt that such assignments were directly contrary to the spirit and policy of some statute in force at the time they were made. Without pausing to consider whether the bankrupt act of 1841 was not impliedly repealed by the 15th section of the IVth article of the constitution of 1845, or by the act of 1848 organizing county courts, we will inquire whether the same, in

policy and spirit, prohibited the conveyance now under consideration. This statute provided, that any citizen or resident, if a male, being twenty-one years old, or a female eighteen years old or over, desiring to yield his or her estate for the satisfaction of creditors, and obtain exoneration from existing debts and pecuniary liabilities, might do so, in observance of certain rules laid down in the act. It is not necessary to state all these rules in full. The debtor was, however, to present a petition to the chief justice of the county where he resided, setting forth the names and additions of his creditors, and the amount of his debt, and praying the benefit of the act. He was required to make oath, among other things, that his petition was preferred in good faith, in order to a just transfer of his estate to his creditors; that he had not conveyed the same with intent to hinder, delay, or defraud his creditors; that none of it was in the possession of any person, under a secret trust, for the benefit of the debtor; and that his transfer contained a full exhibition of such estate as was known to him. Notice of his application was to be published in some newspaper, and, at the time specified in the law, he was to take the above oath and make to assignees a deed of trust of all his property, to be distributed by them according to the provisions of the act, and the conveyance was to be considered as embracing such of his estate as was not recollected or enumerated. The trustees were to be selected by a majority of the creditors, or, in default of such selections, by the chief justice. The chief justice was then to discharge him from his existing debt liabilities. The duties of the trustees are thus laid down at length. The only one of these duties which we need mention is, that they were to sue for and recover all such property as the debtor had previously conveyed fraudulently, and for the purpose of hindering, delaying, defrauding, and defeating creditors. We have not attempted to give the exact language of the statute, but only to give in substance a

portion of its important provisions. Is there anything in the above provisions impliedly forbidding the instrument now in question? We think not.

The statute is evidently intended for the benefit of the debtor, and it is optional with him whether he will take the benefit of its provisions or not. No act which he can commit, no attempt which he might make to put himself or his property beyond the reach of the law, would author-ize a creditor to compel the assignment contemplated by the statute. If he choose to accept its provisions, he must place all his property, with certain exceptions, under the control of trustees appointed by his creditors, to be equally distributed among them. In that case, his future acquisi-tions are to be exempt from seizure and sale for existing debts. If, on the contrary, he choose to select his own trustees, and distribute his property according to his own choice, he has the liberty so to do, but his future gains will be liable for every portion of his liabilities which may not be paid with the property assigned. Not so with the Eng-lish bankrupt law, nor with the act of Congress of April 4, 1800. These laws were made for the benefit of the creditor. For some act committed by a trader, his prop-erty could be seized at the instance of a creditor, taken from his possession, and placed in the hands of assignees, to be by them managed and distributed for the benefit of all his creditors. One of the very acts for which a com-mission in bankruptcy issued was the making of an assign-ment of all the debtor's property for the benefit of pre-ferred creditors. (Burr. on Assign., 14.) This, being in itself an act of bankruptcy, was reasonably construed to be within the prohibitions of the law. One reason why a general assignment, with preferences, should be held void, under a code of bankruptcy enacted for the benefit of the creditor, and not under one created for the debtor's benefit, is very apparent. In the one case, a very important right is guaranteed to the creditor by the law itself. It is to set

the act in operation against the debtor upon the commis-
sion of certain acts, and to have the latter's entire estate
transferred to assignees for equal distribution amongst
those to whom he is indebted. If the insolvent were
allowed to transfer his property to a favored party, he
would defeat 'this right, and render the law inoperative.
In the other case, no such right is secured to the creditor,
and hence none is defeated. The bankrupt law furnished
him with no remedies against his defaulting debtor, and he
is therefore deprived of none by an act which renders its
provisions useless. In accordance with this view, we find
that where such acts provide that creditors only shall set
its provisions in operation, there is no express prohibition
of such conveyances as we have now under consideration.
For instance, the two acts to which we have before alluded,
that of George IV, ch. 16, and that of the United States
of April 4, 1800, being solely for the benefit of cred-
itors, do not expressly prohibit by name assignments pre-
ferring creditors. On the other hand, when such acts are
made, in whole or in part, for the benefit of the insolvent,
they contain in themselves an express prohibition of such
assignment, or these are declared void by other laws of the
same government. Thus the United States bankrupt act
of 1841 was enacted as well for the relief of insolvent
debtors as of creditors, and the express prohibition above
alluded to is contained in it. Massachusetts has a well-
digested system of bankruptcy, which may be taken advan-
tage of by the debtor, and a similar express inhibition is
contained therein. Very few of the other States have
adopted any other system than what is known as an insol-
vent law, for the relief of the debtor's body from impris-
onment. In Wisconsin, however, a law very similar to our
statute of 1841 has been passed, and it has been thought
proper to pass an additional act to prevent partners in lim-
ited partnerships from assigning partnership funds for the
benefit of preferred creditors, thus showing that the legis-

lature did not consider any such assignment within the implied prohibition of their bankrupt act. (See Laws 1858, p. 415.)

We thus have legislative interpretation to the effect, that such trust deeds as we are now considering are not impliedly prohibited by a code of bankruptcy which is enacted for the sole protection of the creditor.

Although assignments preferring creditors are scrutinized very closely by the courts, and are not sustained if tainted with fraud, yet they will not hold that the right to make them is taken away by mere implication from any statute on the subject. They place a strict construction upon all acts of the legislature expressly forbidding such assignments, and will not hold the latter void, unless they come within the letter of the law. Thus, in Pennsylvania, the act of 17th April, 1843, declares that assignments in trust for the benefit of creditors thereafter made by a debtor to trustees shall be held to inure to the benefit of all the creditors, &c. Yet it is decided that a debtor in failing circumstances is not forbidden by that act to confess a judgment, so as to give preference to one creditor over others, and a preference made in this manner will not inure to the benefit of all the creditors. (7 Barry, 451.)

The New York insolvent law provides, among other things, that if a debtor, in contemplation of bankruptcy, make an assignment, or confess a judgment, or give a security with a view to give a preference to an antecedent debt, he shall not be discharged under the statute. (2 Rev. Stats., § 20.)

Under this provision it is held, that such an assignment is not void, but the debtor, by making it, deprives himself of the benefit of the bankrupt law thereafter. (3 Paige Ch., 317, 821.)

In Ohio, by the act of 1835, all conveyances to trustees, in contemplation of insolvency, with design to secure one class of creditors and defraud others, inure to the benefit

of all creditors in proportion to the amount of their demands. In Hull v. Jeffrey, 8 Ohio, 391, this provision was held to apply only to conveyances to trustees, and not to those made directly to a creditor, nor to those made without fraud. These decisions are referred to in order to show that the tendency of the courts is not to invalidate such assignments by mere implication.

Reasons could be multiplied to sustain the position which we take, that the assignment now under consideration was not affected by the bankrupt law of 1841, but we deem it unnecessary to dwell longer upon so evident a proposition. The point is pressed with much ability and earnestness by appellee's counsel, and seems to have been the one upon which the case turned in the court below, or we should not have given it so extended a consideration.

It was error for the court to charge the jury that the assignment made by Kirchhoffer to Van Hook was absolutely invalid as to previous creditors. The circumstances under which the same was made should have been submitted to the jury under appropriate instructions, so that they might have drawn their own conclusions. For this error the judgment of the court below is reversed, and the cause

REMANDED.