## GEORGE HANCOCK v. JOHN HORAN.

Although a debtor, in failing circumstances, may prefer a creditor by the sale to him of property in payment of his debt, yet it must be done openly and fairly, without any other object than the act, on its face, imports ; it must not be done secretly or fraudulently.

Although an instruction be correct in the abstract, or applied to a different state of case, if it have no proper application to the case proved, and is calculated to mislead, and probably did mislead, it is error for which the judgment must be reversed.

Where the vendor of real estate, who is insolvent, remains in possession or continues to receive the rents, claiming it as his own, without objection from the vendee, it is *prima facie* evidence that the sale was simulated, although the deed be duly recorded.

The vendor, in a sale alleged to have been made to delay or defraud creditors, is a competent witness for the vendee ; but his credibility is subject to observation and is to be judged of by the jury. See this case for observations on the credibility of such a witness.

Appeal from Travis. This was a suit by the appellant against the appellee, for a half lot in Austin City, and to cancel defendant's title to the same. The petition of Hancock alleged that he was the purchaser of the half lot in question under a Sheriff's sale, 3d April, 1855, by virtue of judgment rendered 20th May, 1854, against Thomas Cassidy, the half lot being levied upon and sold as Cassidy's property ; that Thomas Cassidy bought the lot at a Sheriff's sale, ordered in the case of Smith v. Robertson, Horton et als., on March 7th, 1854 ; that he conveyed the same to Wm. O'Connell, April 4th, 1854, who conveyed to John Horan, the defendant, July 24th, 1854 ; that the deed to O'Connell was without consideration, fraudulent and void, as well as the deed to Horan ; that they were made to hinder and defraud creditors ; and, finally, that the possession had remained with Cassidy after the pretended sales.

Defendant in his answer stated that Cassidy, in his purchase

of the lot in question, acted only as the agent of defendant Horan; that he, Horan, advanced the money to pay for it; that Cassidy owed him other money in addition to that' advanced, and that the deed to O'Connell was made to secure him, the defendant, and that afterwards in pursuance of agreement, O'Connell, by Cassidy's directions, made title to him.

The evidence on the trial consisted of :

The Sheriff's deed to Cassidy of Lot 4 in Block 70 in Austin City, dated March 8th, 1854.

The deed from Cassidy to O'Connell of the same, dated April 4th, 1854, expressing $2,500 as the consideration of the deed.

The deed from O'Connell to Horan of the same, dated July 24th, 1854.

The deed of the Sheriff Price to Hancock to the North half of said lot, dated April 19th, 1855.

The deeds were all duly recorded about the time of their dates respectively.

The original judgments on which the sale of the Sheriff was founded, dated May 20th, 1854.

The notes on which the judgments were obtained, showing that they fell due about the 1st of April, at or near the time Cassidy made the transfer to O'Connell; also the citations in the suits showing that they were served very soon after.

The substance of the parol testimony was as follows : Mr. Brewster testified that the whole of Lot No. 4 was bid off by Cassidy at the sale, for $2,200 ; that he knows Cassidy paid $1000 out of the $2,200, for the witness himself procured the money from Sam Harris and paid it, and Cassidy mortgaged the Lot to Harris to secure the re-payment of the money so loaned ; that he had frequent conversations with Horan and Cassidy during the summer of 1854 ; that Horan claimed the South half of Lot No. 4, laid no claim to the North half, but acquiesced in Cassidy's claim thereto, and was willing for Cassidy to mortgage it.

O'Brien testified that the rent of the North half of Lot No. 4 went to Cassidy after the deed to Horan ; that Cassidy told him he had borrowed $1000 of Sam Harris to pay for said half Lot. There was other and full proof that Cassidy received the rents after the conveyance to Horan and exercised other acts of ownership before and after, such as building upon it, &c.

It was also proved that Cassidy admitted to the Notary at the time of acknowledging the deed to O'Connell, as well as afterwards to others, that he did it " to save himself."

O'Connell swore that the deed to him was made without consideration farther than to secure Horan in some debts owed to him by Cassidy ; that he saw Horan pay a large sum of money to the Sheriff, on the sale, and heard one or the other say it was about $2000. Cassidy swore that he borrowed the one thousand of Harris to pay for the North half of Lot No. 3, in order to swap for the Lot in controversy, but had never done so. He stated that he bought the whole of lot No. 4 only as agent of Horan ; that he owed Horan several hundred dollars.

On this state of facts the Court charged as follows :

3rd. A transfer of property, made from one party to another, with the intent to delay, hinder or defraud creditors, is void, if the person purchasing was knowingly a party to the fraud.

4th. If A purchase property for B with B's money, the property so purchased belongs to B, although A should take the title in his own name.

5th. A person in failing circumstances, or insolvent, has a right to prefer creditors, and may, in payment of a debt, convey property to one creditor, to the exclusion of all other creditors.

6th. If from the evidence you believe that Cassidy purchased the lot deeded by Scott, the Sheriff, to him, with the money of the defendant Horan, and for Horan's benefit, then you will render a verdict for the defendant Horan.

7th. If, however, you believe from the evidence that the pur-

chase money was not advanced by Horan, but that Cassidy was indebted to Horan, either for debts incurred or money loaned, and that the transfer to O'Connell in 1854, or his transfer to Horan in July, 1854, was made in consideration of Cassidy's indebtedness, then you will find for the defendant, Horan.

8th. If you are not satisfied that Cassidy obtained the purchase money from Horan, or that the transfer to O'Connell, or O'Connell's transfer to Horan, were made to secure Horan for debts due by Cassidy to him, then you will find a verdict for the plaintiff.

And refused the following modifications asked by the plaintiff's counsel :

1st. That although secret and resulting trusts can be enforced between the parties contracting them without any deed or written evidence, yet that no secret or resulting trusts can be enforced against any creditor or purchaser who is not knowing to the circumstances creating such lien or trust.

5th. That possession of the half Lot by Cassidy claiming it as his own, and receiving the rents and profits to his own use, after the deed to O'Connell, without any objection made by O'Connell or Horan, would be *prima facie* evidence of fraud in the deed."

*J. A. & R. Green* and *C. S. West*, for appellant.

*S. C. Blanton* and *W. L. Robards*, for appellee.

WHEELER, J.　It is evident from the charge of the Court, that the conveyance from the debtor, Cassidy, to O'Connell, and from O'Connell to Horan, the defendant, was regarded and treated by the Court as the case of a rightful preference, by the debtor, of one creditor to another. This is apparent from the fifth proposition in the charge taken in connexion

with the seventh, to the effect, that, though the purchase money was not advanced by Horan, yet if Cassidy was indebted to Horan, and either conveyance was made in consideration of such indebtedness, the jury would find for the defendant. The fifth proposition, to the effect that a debtor has a right to prefer one creditor to another, is undoubtedly correct in the abstract. It, however, is subject to the qualification that it must be done openly and fairly, without any other object than the act, on its face, imports; it must not be done secretly or fraudulently. (Edrington v. Rogers, et al., *supra.*)

The present manifestly was not the case of preferring a creditor; nor can the secret trust, which it was sought to establish in favor of the defendant, he maintained as an exercise of that right. The charge of the Court, therefore, though it might have been correct in the abstract, or as applied to a different state of case, had no proper application to the present case; but was calculated to mislead, and probably did mislead the jury. There can be but little doubt that it controlled their verdict. It is true, the Court charged, in general terms, that a conveyance made to defraud creditors is void. But in the proposed application of the law to the facts, which followed, this principle appears to have been lost sight of; and the question of fraud, in fact, was virtually and effectually withdrawn from the consideration of the jury. Under the charge of the Court, upon the supposed resulting trust, and the right of preferring creditors, the jury were bound to find for the defendant, however convincing to their minds the evidence may have been, that the conveyance was in fact made to defeat and defraud creditors of their rights. That this was error, is manifest.

The refusal of the Court to give instructions asked by the plaintiff proceeded, doubtless, from the same opinion, which the charge maintains, that if the conveyance was made in consideration of an antecedent indebtedness, it was a lawful preference of one creditor over others; and was valid and effectual to vest title in the defendant; whatever, and however

convincing the evidence of fraud in fact. It is not perceived upon what other principle the fifth instruction asked could have been refused. It appears to have been framed with a direct reference to the ruling of this Court in the case of Bryan v. Kelton, (1 Tex. R. 415,) and did but ask an application of the law of that case to the present. It could not have been refused as irrelevant, or as embraced in the general charge of the Court; for it was neither. It was plainly applicable to the evidence; and the general charge did not embrace it in terms or in substance.

The debtor, and alleged fraudulent grantor, was introduced as a witness by the defendant to uphold his conveyance, as is commonly the case where a party claims under a conveyance thus impeached as a fraud upon creditors. The grantor in such cases is held to be a competent witness for the grantee, because, it is said, his interest is adverse to the party calling him. And so it is, upon the supposition that he has or may have other property liable to be subjected to the payment of his debts; and has not conveyed upon any secret trust or understanding, whereby he is to be benefited in case of the success of the party claiming to hold the property under his conveyance. He may stand indifferent between the parties, and be entitled to credit; and therefore the law allows him to testify. But common observation and experience show how seldom this is the case; in fact, where he is called to support his own alleged fraudulent conveyance, the fraudulent grantor will, of course, feel a strong desire to prevent the detection and exposition of his own fraudulent conduct. He who is called to testify to the question of his own integrity, if the truth be adverse to it, must be more than ordinarily indifferent to the opinions of mankind, if he does not experience a powerful motive to swerve from the truth, though he should not expect to derive any pecuniary advantage from his testimony. The very position which such a witness occupies goes to his credibility; which is subject to observation, and is to be judged of by the jury.

As the case must be remanded for a new trial, we will not express our opinion upon the evidence ; nor upon other assignments of error not relied on in argument for the appellant. The judgment is reversed and the cause remanded.

Reversed and remanded.