Argument for the appellant.

## W. R. EDWARDS V. G. B. DICKSON ET AL.

(Case No. 2058.)

| 66 | 613 |
| 87 | 103 |
| 63 | 613 |
| 91 | 267 |

1. INSOLVENT DEBTOR—SALE OF GOODS TO CREDITOR—The right of a creditor to purchase of a debtor in failing circumstances a sufficient amount of property to pay his debt, is well settled, although the necessary consequence of the transaction is to hinder and delay other creditors in the collection of their debts. (Authorities cited.)

2. SAME—GOOD FAITH—RULE QUALIFIED—No more property must be transferred than is essential to pay the debt at a fair valuation, and the transaction must be open and *bona fide*, that is, the sale must be absolute, not attended with any secret trust for the benefit of the debtor, and not a mere colorable transaction. (Greenleve, Block & Co. *v.* Blum, 59 Tex., 126.)

3. SAME—INTENT—NOTICE—If the transfer is *bona fide*, made with intent to satisfy the debt, and no more property is transferred than is necessary for that purpose, then it matters not whether or not the debtor intended to hinder or delay his creditors, or whether the creditor knew or ought to have known of such an intent, if it existed. See opinion for charge held erroneous.

4. FRAUD—EVIDENCE—POSSESSION OF VENDOR AFTER SALE—Possession on the part of the seller after the sale is not fraud *per se*, but is *prima facie* evidence of fraud, subject to be rebutted by other evidence explanatory of the possession, showing that it is consistent with a fair transaction. (Authorities cited.)

5. EQUITABLE ESTOPPEL—HOW CREATED—Equitable estoppel is the effect of voluntary conduct of a party whereby he is precluded both at law and in equity from asserting the rights which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy.

6. SAME—REPRESENTATION—The conduct creating the estoppel must be something which amounts either to a representation or a concealment of the existence of facts, and in all ordinary cases the representation or concealment must have reference to a present or past state of things ; if it refers to a future state of things, it is a mere expression of intention or opinion, or is to be governed by the laws of contract. (Big. on Estop., 486, and other authorities cited.)

7. SAME—EVIDENCE—See opinion for evidence not making a case of estoppel, and for special charge improperly refused.

APPEAL from Titus. Tried below before the Hon. W. H. Baldwin, Special Judge.

The opinion states the facts.

*Todd & Hudgins*, for appellant, on transfer of goods by a debtor to his creditors, cited: Greenleve *v.* Blum, 59 Tex., 126; Schneider *v.* Sansom, 62 Tex., 201; Edrington *v.* Rogers, 15 Tex., 195; Hancock *v.* Horan, 15 Tex., 511.

On possession of goods by the vendor, after sale, as evidence of fraud, they cited: 2 Tex., 365; 9 Tex., 598; 22 Tex., 670; 25 Tex., 204; 28 Tex., 732, 780.

On estoppel, they cited: Langdon v. Dowd, 10 Allen, 433; 6 Allen, 423; Insurance Company v. Mowry, 96 U. S., 544; 120 Miss., 64, 79; 50 Miss., 429; 51 Vt., 436; 51 N. Y., 289; 4 Jacob's Fischer's Dig.; Eng. Com. Law Rep. title, Estp., 4752, citing Bank v. Bank; 43 Law Jour. Ch., 269; 6 Law Rep., H. L., case 352; 22 W. R., 194; Burleson v. Burleson, 28 Tex., 383, 415–417. Jackson v. Stockbridge, 29 Tex., 394, and authorities therein cited; Shapley v. Abbott, 1 Am. Rep., 548; Brightman v. Hicks, 108 Mass., 246; Story's Eq. Jur., secs. 191, 199, 386; Pome. Eq. Jur., secs. 805–813; Bige. on Estp., 486, *et seq.*

No briefs on file for appellee.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellant to recover of appellee, Dickson, as sheriff, and the other appellees, as sureties on his official bond, damages for the seizure of a stock of drugs by Dickson under an execution against one W. H. Blythe. Appellees pleaded a general denial, and, for special answers, set up that the sale of the goods from Blythe to appellant was fraudulent and void as to creditors of Blythe, and, also, that by reason of certain representations made by appellant, he is estopped to assert his claim to the property.

The first error assigned by appellant, is as follows: "The court erred in its charge to the jury in this: The court instructs the jury in substance and effect, that the sale from Blythe to Edwards would be fraudulent and void, if Blythe intended to defraud his creditors, and Edwards knew or ought to have known of such intent, even though he (Edwards) took the goods in payment of a *bona fide* debt due to him from Blythe, and took no more goods than enough to pay such debt."

The right of a creditor to purchase of a debtor in failing circumstances a sufficient amount of property to pay his debt, is well recognized by authority, although the necessary consequence of the transaction is to hinder and delay other creditors in the collection of their debts. Greenleve, Block & Co. v. Blum, 59 Tex., 126; Iglehart v. Willis & Bro., 58 Tex., 306; Schneider & Davis v. Sansom, 62 Tex., 201; Frazer v. Thatcher, 49 Tex., 26; Edrington v. Rogers, 15 Tex., 195; Hancock v. Horan, *Id.*, 511.

This principle follows a deduction from the right of an insolvent debtor to prefer one creditor to another, and is subject to the qualification, that no more property must be transferred than is essential to pay the debt at a fair valuation, and that the transaction must be open and *bona fide*; and in saying that the transaction must be made in good

faith, we understand, it is meant, that the sale must be absolute, that is, not attended with any secret trust for the benefit of the debtor, and must be a real and not a mere colorable transaction. (See Greenleve v. Blum above cited.) If it be a real transfer of the property unaccompanied with any secret understanding or trust on behalf of the debtor, and with intent to satisfy the debt, and no more property be sold than is necessary for that purpose, then it matters not whether or not the debtor intended to hinder or delay his creditors, or whether the creditor knew or ought to have known of such intent, if it existed. Let us apply these principles to the instruction complained of. In the preceding paragraphs of the charge the court gives a clear exposition of the law upon this question and applies to appellant's phase of the case. Then follows the following instructions:

7. "If you believe from the evidence that Blythe sold his goods, etc., described in plaintiff's petition, to plaintiff for the purpose of hindering, delaying or preventing Blythe's creditors from the collection of their debts, and that plaintiff, Edwards, knew of Blythe's intent, or ought to have known by the exercise of proper deligence of said intent at the time said sale from Blythe to Edwards was consummated, you will find for defendant."

8. "If Blythe's intent was fraudulent (of which you are the judges) and was or ought to have been known to plaintiff at the time of said sale, Edwards could acquire no right to said stock of drugs, etc., to the prejudice of Blythe's other *bona fide* creditors (if he had any such), even though Edwards took no more goods than satisfied a debt Edwards may have held against Blythe."

Plaintiff's case, as developed by his testimony, was that he had bought the goods of the defendant in execution before the levy in payment of a debt due him by the latter, and that the value of the goods was not more than sufficient to pay the debt; that delivery had been made, and that he was in possession at the time of the levy. As applied to such a case, the charge is erroneous. It instructs the jury in the first paragraph quoted to find for defendant if they believed that Blythe sold the goods for the purpose of hindering, delaying or preventing Blythe's creditors from the collection of their debts, and that plaintiff knew, or ought to have known, of the intent, etc. This is in conflict with a previous paragraph of the charge, and, however one learned in the law might construe the several paragraphs upon this branch of the case, when taken together, it is clear that the particular instruction under discussion, was calculated to mislead the jury, to appellant's prejudice, and is reversible error. (See Railway Company

*v.* LeGierse, 51 Tex., 189; Bailey *v.* Mills, 27 Tex., 434; Willis & Bro. *v.* McNeil, 57 Tex., 465; Chandler *v.* Fulton, 10 Tex., 2.)

The second assignment of error is "that the court erred in its charge to the jury in this: it instructs the jury that the law would presume fraud from the unexplained possession by the seller Blythe." The rule laid down in this state is that possession on part of the seller after the sale is not fraud *per se*, but is *prima facie* evidence of fraud, subject to be rebutted by other evidence explanatory of the possession showing that it is consistent with a fair transaction. Bryant *v.* Kelton, 1 Tex., 415; Converse *v.* McKee, 14 Tex., 20; McQuinnay *v.* Hitchcock, 8 Tex., 33; Hancock *v.* Horan, 15 Tex., 507; Mills *v.* Walten, 19 Tex., 271; VanHook *v.* Walten, 28 Tex., 59; Gibson *v.* Hill, 21 Tex., 225.

In the case last cited the judgment was reversed because of the failure of the court below, at the request of appellant, to give a charge substantially the same as that complained of in the assignment of error under consideration. It may be that the instruction before us was too general, and under the facts of the case should have told the jury what the law considered possession on part of the seller, and what evidence, explanatory of such possession, would rebut the presumption of fraud raised by such possession. If so, the remedy of appellant was to ask an additional charge upon the point. Not having done so, he cannot now complain.

Appellees, among other things, pleaded in substance, that long before the levy of the execution, by virtue of which appellee, Dickson, as sheriff, seized the goods in controversy, that appellant represented to the attorneys of the plaintiff in execution, that if they would hold up and not levy said execution, said stock of goods should not be transferred except in the usual course of trade, and should remain subject to the levy of the execution; and that, relying upon said representations, said attorneys did hold up said executions, and that said representations were false and fraudulent, and deceived said attorneys, etc.; and they set up, that by reason of said representations, appellant was estopped to claim the goods levied on. Upon this branch of the case, the court charged the jury as follows: "If you believe from the evidence that plaintiff made misrepresentations to Blythes' creditors, who had executions in the hands of defendant, Dickson, or to their attorneys, or any of them, for the purpose of deceiving, and which did deceive, and calculated to have that effect, and induced said execution creditors (if any there were) or their attorneys, to withhold the levy of execution on Blythes' property, subject to forced sale under execution, promising that he would keep Blythe from disposing of said

stock of drugs, except in the due course of trade, and that Blythe should keep such goods and not dispose of same, in bulk, so as to put it out of the reach of his (Blythe's) creditors until the fall of 1883, and that before said time Blythe made a sale to plaintiff Edwards of all his property subject to forced sale including said stock of drugs, etc., and thereby rendering himself insolvent, and placed said goods beyond the reach of other *bona fide* creditors, then you should find for the defendant."

Counsel for appellant, among other instructions requested, asked the court to charge that to constitute an estoppel, the representations must have been made to the attorneys of plaintiff in the execution levied on the goods, and that a representation made to the attorney of another creditor would not be sufficient; and further, that such representations must relate to existing state of facts, and that a promise to do or not do something in future cannot operate as an estoppel. These special instructions were refused. The general charge of the court upon the subject of estoppel, and the refusal to give the special charges asked are both assigned as errors.

In 2 Pomeroy's Equity, sec. 804, the following is given as an accurate definition of an estoppel *in pais:* "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is precluded, both at law and in equity, from asserting the rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy."

In elucidating this definition, the author in section 808 of the same volume says:  "The conduct creating the estoppel must be something which amounts either to a representation or a concealment of the existence of facts.  *   *   *   *  The facts represented or concealed must in general be either existing or past, or at least represented to be so.  A statement concerning future facts would either be a mere expression of opinion, or would constitute a contract and be governed by the rules applicable to contracts."

The law is thus stated by Bigelow:  "The representation or concealment must, like a recital, also, in all ordinary cases, have reference to a present or past state of things; for if a party make a representation concerning something in the future, it must be either a mere statement of intention or opinion, uncertain to the knowledge of both parties, or it will come to a contract with the peculiar consequences of a contract."   Big. on Estp., 486.

The following cases cited seem to sustain the doctrine: Jackson *v.* Allen, 120 Mass., 64, 79; Langdon *v.* Doud, 10 Allen, 433; White *v.* Ashton, 51 N. Y., 280; Insurance Company *v.* Mowry, 96 U. S., 544; see also White *v.* Walker, 31 Ill., 422. The case of Faxton *v.* Faxon, 28 Mich., 159, seems to conflict with this doctrine, but comes clearly within the exception to the rule, which is thus stated by Mr. Justice Field, in the case of Insurance Company *v.* Mowry, cited above: "Apart from the circumstance that the policy subsequently issued alone expressed its contract, an estoppel from the representations of a party can seldom arise except when the representation relates to a matter of fact, to a present or past state of things. * * * The only case in which a representation as to the future can be held to operate as an estoppel, is when it relates to the intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act."

The case of Dickerson *v.* Colgrove, 100 U. S., 578, recognizes the exception. Both in that case and the Michigan case there was a long lapse of time between declarations of the abandoment and the assertion of the right, and this circumstance is commented upon as an important feature in the controversy.

The testimony upon this branch of the case before us, is that appellant went to the attorneys of the plaintiff in execution and told them that if they would not levy the execution upon the goods in controversy, he would see that the goods should not be sold in bulk, and that the attorneys, relying upon said promise, were induced thereby to hold up the execution.

This is the substance of the evidence, and is placed in its strongest light for appellees. Now if there was no agreement on part of the attorneys to accept the offer of appellant, it was a mere declaration of intention or naked promise as to future conduct, and, under the rule laid down, cannot estop, although acted upon by the party to whom made. If accepted by the attorney, the promise contained every element of a contract, and upon its breach the plaintiff in execution had his remedy at law. Again, this suit is brought against the sheriff for his alleged trespass in seizing the goods. Mellier, the plaintiff in the execution under which the levy was made, is not made a party. It does not clearly appear that Mellier has any interest in the controversy, though the sheriff testified that he was "indemnified." We might infer from this that Mellier had given bond to hold him harmless, or at least to make good his damages, if any. Under this state of case the question may be asked, can appellee Dickson set up the estoppel if any existed? But we are of opinion that neither appellees'

answer nor their evidence make a case of estoppel, and that the court erred in giving the charge upon the subject which is complained of, and also in refusing to give the counter-charge asked by appellant.

For the errors indicated the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 29, 1886.]