TARDIO v. FIRST NAT. BANK OF BRYAN. (No. 5280.)

(Court of Civil Appeals of Texas. San Antonio. May 6, 1914.)

1. BILLS AND NOTES (§ 377*)—FORGERY—ESTOPPEL.

Where the apparent maker of a note accompanied by the payee thereof represented to a bank that the note was good, and the bank on the payee's indorsement took the note and paid the money thereon, such maker was estopped from defeating a recovery by the bank on the note on the ground that it was a forgery.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 952; Dec. Dig. § 377.*]

2. BILLS AND NOTES (§ 459*)—PARTIES—PROPER PARTIES.

The maker of a note is the proper party defendant in an action thereon, and, if he desires that the payee shall be made a party, he must request it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1424–1433; Dec. Dig. § 459.*]

Appeal from Brazos County Court; J. T. Maloney, Judge.

Action by the First National Bank of Bryan against Frank Tardio. From a judgment for plaintiff, defendant appeals. Affirmed.

W. M. Hilliard, of Caldwell, for appellant. V. B. Hudson, of Bryan, for appellee.

CARL, J. The First National Bank of Bryan brought suit against appellant, Frank Tardio, on a note, alleged to have been executed and delivered by appellant to C. E. Edwards on September 15, 1911, for the sum of $350, payable on September 1, 1912, and bearing 10 per cent. interest per annum; and it was alleged that, before the maturity thereof, said note was transferred by Edwards to appellee, and further showed that same was entitled to a credit of $111.05 of date November 20, 1912. The defendant, Tardio, answered, pleading non est factum, and alleging that the note was a forgery. In reply to this, the appellee alleged in a supplemental petition that on or about August 24, 1912, appellant requested the bank to take up his $350 note held by C. E. Edwards, which it is alleged appellant represented he had given for rent, and that same was a valid, subsisting, and unpaid claim against Tardio which he then and there promised to pay at maturity; that thereafter the bank did take up said note from Edwards; and that appellee was present at the time said note was taken up by the bank at his request; and that same was so taken up at the special instance and request of Tardio. It is further alleged that appellant has since ratified and confirmed the transaction, in that on November 20, 1912, he paid thereon $111.05, which was indorsed thereon as a credit; that, if said note is a forgery, the bank had no notice of the same, and was an innocent purchaser, without notice, for a valuable consideration and at the instance and representation of Tardio that same was a genuine instrument, and was for rents for 1912; and that Tardio did not inform the bank that same was a forgery, but represented it to be a true and valid instrument, binding on him (appellant), and that Tardio was responsible for appellee's buying the note. The defendant below denied these matters in a supplemental answer.

The trial was before the court, and the findings of fact are, in substance, as follows:

On August 24, 1912, the defendant went to the First National Bank of Bryan and told H. O. Boatwright, its president, that he owed C. E. Edwards a rent note for the sum of $350 which would be due September 1, 1912, and which he could then pay, but that Edwards was insisting on the payment of the same, and that it would be an accommodation to him if Boatwright would take up said note, thereby relieving him of worry and harassment that Edwards was causing him. Thereupon Boatwright consented to take it up, and Tardio left the bank, and in a short while returned in company with Edwards. Boatwright asked them if they had the note, to which Edwards replied that he did not have it then but would get it. Appellant and Edwards left the bank together, and, while Edwards was gone for the note, Tardio came into the bank two or three times inquiring if Edwards had returned with the note. In about 30 minutes Edwards and appellant came into the bank together, and Boatwright asked Tardio if they had the rent note, to which he replied that Edwards had it. In the presence of Boatwright and Tardio, Edwards indorsed a rent note purporting to be defendant's note, and Boatwright, in the presence of both the others, took the note and paid Edwards $350, the face value of the note. It was at the special instance and request of Tardio and upon his statement that he would pay said note at maturity that Boatwright agreed to take it up, and appellant was with Edwards when he came into the bank, saw him indorse and deliver the note to the bank, and saw the money paid to Edwards. Tardio turned over to the bank two bales of cotton on August 24, 1912, to be applied as a payment on the note. The note is a forgery, but the bank had no notice that it was a forgery until about September 1, 1912, when the defendant came into the bank and told Boatwright the note was a forgery, but then and several times thereafter promised to pay the same, after he knew it was a forgery. He had never disclaimed the debt prior to the suit. The receiver of the estate of C. E. Edwards got the proceeds of the sale of the cotton left by defendant, but afterwards left $111.05, representing the sale price of the cotton, with the bank which was entered as a credit on the note. The judgment was for $260.73. The court found that defendant, before the discovery of the forgery, by his statements and actions had misled the bank, and thereafter promised to pay the same, thus ratifying the said note, and that he is estopped from asserting that the note is a forgery.

We do not agree with the finding of the trial court that defendant paid the $111.05 after the discovery of the forgery. He left the cotton there before the forgery was discovered, and Boatwright collected the money and held it until Jacob Fuchs, the receiver of Edwards' estate, called for it and collected it. Later, in November, the receiver paid the money back to the bank, and it was credited on the note, November 20, 1912.

[1] It will be seen that appellant, himself, induced the bank to take up the note. Tardio received nothing himself, but it cannot be said that his promise to pay the debt evidenced by the note was without consideration. He induced the bank to part with the money. He came with Edwards to the bank, saw him indorse the note and receive the money; and, if he did not know the note was forged, he should have known it, because he was in a position to know or to have found out if he had used ordinary care. An equitable estoppel will be created, "not only when the party sought to be concluded knows the material facts he is charged with having represented or concealed, but also where he is 'in such position that he ought to have known them, so that knowledge will be imputed to him.'" Weinstein v. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23. There was no neglect or fault on part of the bank, and, granted that Tardio did not know the note was forged at the time he got the bank to take it up, "if there was no neglect in the plaintiff, yet there was no reason to throw off the loss from one innocent man upon another innocent man." Bigelow on Estoppel, 482. But in this case, if there was any fault or negligence in any one, it was the defendant and not in the plaintiff. And where two parties are equally innocent, and yet a duty devolves upon one which he fails to perform and injury results, of the two, the one so failing to discharge the duties he owns should be the loser. Tardio had gone there and made the request, as an accommodation to him, that the bank take up his note and came there with the forger who negotiated it in his presence. If the note were not genuine, whose duty was it there to make that known? The banker could reasonably assume that, since he had requested that the note be taken up and had come with the forger, the note actually indorsed was genuine. Appellant was getting the note taken up, and the consideration and accommodation were being extended to him.

Representations do not always have to be made by words. The actions of the party may proclaim facts more eloquently than words; and when Tardio went out and got the man who held the note and brought him in there to the bank, stood there, and saw the whole transaction, it amounted to saying to Boatwright that this is the note I wish taken up. Edwards v. Dickson et al., 66 Tex. 617, 2 S. W. 718; Bigelow on Estoppel, 486; Weinstein v. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23; Page v. Arnim, 29 Tex. 53.

In the case of Mo., etc., Ry. Co. v. Yale, 27 Tex. Civ. App. 10, 65 S. W. 57, it is said: "If a man, whatever his real meaning may be, so conducts himself that a reasonable man would take his conduct to mean a certain representation of facts, and that it was

a true representation, and that the latter was intended to act upon it in a particular way, and he with such belief does act that way to his damage, the first is estopped from denying that the facts were as represented." Again, Cyc. (16—752ff) cites the Texas case of Henry v. Bounds, 46 S. W. 120, in support of the well-established doctrine that: "Where a person liable on a note promises a prospective purchaser to pay same, or represents to him that the obligation is valid, and that there is no defense to it, he is estopped to resist payment in an action by such person who has taken the paper in reliance on his representation."

"Equitable estoppel is the effect of voluntary conduct of a party whereby he is precluded both at law and in equity from asserting the rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." Griffith v. Rife, 72 Tex. 185, 12 S. W. 168; Bridges v. Johnson, 69 Tex. 714, 7 S. W. 506; Edwards v. Dickson, 66 Tex. 613, 2 S. W. 718.

[2] If appellant had desired that Edwards be made a party or could have derived any comfort from so doing, he should have taken that step himself. Tardio, as the payor named and the man who had induced the bank to buy the note, was the proper party to be sued. We are not saying that a forged instrument is not void; but we do say that under all the facts in this case appellant, by his acts, has placed himself in a position where the fact that the note is forged will not avail him anything against the party whom he induced to take it up for him.

The assignments are all overruled, and the judgment is affirmed.