### SAN ANTONIO NAT. BANK v. CONN.*
(No. 6659.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 11, 1922. Rehearing Denied Feb. 15, 1922.)

**1. Fraudulent conveyances ⬤⇒115(1)—Law does not favor preferences to class of creditors.**

The purpose of a debtor to favor a certain class of creditors by paying them in full before other creditors is one which the law does not favor and will not aid.

**2. Banks and banking ⬤⇒140(3)—Statement check was good to-day is not agreement to pay it.**

Where a bank, on receiving an inquiry whether it would pay a draft upon it, replied, "Check is good to-day," it did not thereby agree to pay the check whenever presented, but merely stated there were sufficient funds to meet it and required the holder to present the check before the funds were withdrawn.

**3. Banks and banking ⬤⇒134(1)—General deposits may be applied to depositor's indebtedness to bank, notwithstanding report check was good.**

Where a bank had reported that a check against a general deposit was good, it was under no obligation to prevent the withdrawal of the deposit to meet other checks before the first was presented, and had the right before such presentation to apply the amount of the deposit to an indebtedness due it from the depositor.

**4. Assignments ⬤⇒49—Secret intent of depositor does not make check an assignment of funds.**

An intent by the depositor to assign a portion of his deposit by a draft upon the bank, which intent was not communicated to the payee of the draft nor to the bank, does not operate as an assignment of the fund in favor of the payee.

**5. Assignments ⬤⇒137—Evidence held not to support special issue as to intention to assign deposit.**

In an action against a bank on a draft drawn by a depositor who had since become insolvent, evidence *held* insufficient to warrant submitting a special issue as to whether the drawer had assigned a portion of the deposit to plaintiff, so as to prevent its application by the bank to his indebtedness to the bank.

**6. Assignments ⬤⇒138—Requested charge as to proof of equitable assignment of deposit held proper.**

Even if the evidence had warranted submission of a special issue as to whether a depositor had equitably assigned a portion of his deposit to plaintiff, it was error to refuse a requested charge that to constitute such assignment it must appear that there was an agreement to that effect between the drawer and the payee of the draft.

**7. Estoppel ⬤⇒52—Representations must be false and relied on to injury.**

To establish an estoppel by misrepresentations, it must be shown that the representations were false, and that· action was taken in reliance thereon by a party ignorant of the facts, which would result in loss or a material change of position for the worse.

**8. Banks and banking ⬤⇒140(4)—Mortgages from depositor held not to estop application of deposit to indebtedness.**

The fact that a bank which had taken mortgages on a depositor's cattle to secure an indebtedness due it permitted the depositor to sell the cattle in ordinary course of business and deposit the proceeds in a general deposit subject to check does not estop·the bank from applying the deposit to the payment of the indebtedness, as against the payee of a draft drawn upon the bank, who had not relied upon the bank's dealings with its depositor or changed his position to his injury thereby.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by R. C. Conn against the San Antonio National Bank and others. Judgment for the plaintiff against the named defendant, and that defendant appeals. Reversed, and judgment rendered for defendant.

Denman, Franklin & McGown, of San Antonio, for appellant.

COBBS, J. R. C. Conn, appellee, sued Ward Cattle & Pasture Company and the San Antonio National Bank, in the district court of Jasper county, to recover the sum of $5,000 against appellant, represented by a draft drawn by the Ward Cattle & Pasture Company on the appellant in favor of R. C. Conn or order. It was transferred to the Fifty-Seventh district court of Bexar county on a plea of privilege. Before the trial, R. C. Conn having died, the cause survived in the name of Mrs. S. N. Conn, the sole devisee and independent executrix under decedent's will. In addition to appellant Ward Cattle & Pasture Company and P. R. Austin, as receiver thereof, were made defendants. On May 22, 1915, Ward Cattle & Pasture Company executed and delivered to R. C. Conn its promissory note for the sum of $6,671, · securing same by a chattel mortgage on 256 head of cattle, which, not being paid at its maturity, was extended by agreement until

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ˢWrit of error granted April 5, 1922.

the 14th of January, 1916, and that on the latter date it was further extended to the 15th day of April, 1916, and in consideration of other valuable things and a collateral promissory note of the Hatchells for $1,120.-70 delivered to Conn, all represented by a written agreement was further extended. On the 26th day of April, 1916, Ward Cattle & Pasture Company drew its draft as aforesaid for $5,000, payable to order of Conn. At that time there was a suit pending in Fort Worth against said Ward Cattle & Pasture Company for $115,000, and the president of that company, expecting trouble from his creditors, was desirous to secure money to put off his little creditors in order to arrange with the larger ones, executed the said draft drawn on appellant's bank, and mailed same to Conn to secure from him a release of the mortgage on cattle and cancellation of Ward Cattle & Pasture Company's said note held by Conn. The draft was received by Conn, April 29, 1916, and placed in his bank, which bank caused the following wire to be sent:

"San Antonio National Bank, San Antonio, Texas. We have for collection on you Ward Cattle & Pasture Co. draft for five thousand dollars in favor of R. C. Conn. Will you pay same. Answer.
          "[Signed]  Kirbyville State Bank."

Appellant sent the following wire:

          "San Antonio, Texas, April 29th.
"Kirbyville State Bank, Kirbyville, Texas. Check of Ward· Cattle & Pasture Company five thousand dollars is good to-day.
          "[Signed]  San Antonio National Bank."

Upon the receipt of this wire Conn marked the note paid and sent it with an order to the clerk of Matagorda county, as requested in the letter inclosing draft, to release the chattel mortgage, and also delivered R. E. Ward, the president of the cattle company, the Hatchells'. collateral note.

Appellee pleaded the appellant was estopped from contending it was not liable upon said draft on account of the dealings and cause of action between the Ward Cattle & Pasture Company and the San Antonio Loan & Trust Company, trustee in the Ward Cattle & Pasture Company's chattel mortgages on the cattle securing the obligation to the San Antonio National Bank, which had continued for a period of three years or over with the cattle company, during which time it became indebted at various times in a sum something like $400,000 to appellant and to said trust company; that said Ward Cattle & Pasture Company did not have sufficient funds or capital, except such as it obtained from time to time by buying and selling cattle upon the credit given it by appellant; after it had secured the credit to operate and continue its business upon the credit so allowed, by executing its notes and securing same by its various deeds of trust and ex-

tensions secured upon its cattle, with the knowledge, acquiescence, and consent of the bank and trust company and all of its officers and agents, it continued as it had done before in buying and selling cattle in the open market and in all respects conducted its business as though there had been no mortgage at all given; so, then, as it sold the mortgaged cattle it deposited the proceeds in the San Antonio National Bank and checked same out at its will, which continued until the appointment of a receiver for the cattle company in 1916, of which arrangement Conn was advised when the note was executed to him by the Ward Cattle Company for the $6,671, representing the purchase of the Conn cattle; the draft for $5,-000 was drawn to extinguish so much as was represented by that note; after the issuance of said draft, and before its presentation for payment, a receiver had been appointed of all the cattle company's property, but Conn made no claim to the fund in the bank through the receivership; that at the accrual of the indebtedness and presentation of the draft the cattle company was not indebted to the San Antonio National Bank, because the notes executed by the cattle company and mortgaged security to it had been transferred to George W. Brackenridge without recourse, and if the bank had any right ,to the proceeds, it was through contract with Brackenridge, not known to the Ward Cattle & Pasture Company or to Conn, and the San Antonio National Bank is estopped from asserting same against appellee; that appellee called upon the receiver to deliver the cattle mortgaged to Conn, which the receiver refused to do, and has become liable to appellee in the sum of $7,500, their value, together with interest and attorney's fees; prays for judgment against appellant for the amount of the. said note and for foreclosure of chattel mortgage lien on the cattle. Appellee dismissed the case as to R. E. and R. Q. Ward.

The appellant's defense consisted of a plea of misjoinder of actions, general and special exceptions, general and special answer, and denials. It pleaded that prior to the presentation of the draft it had applied all the funds on deposit in name of cattle company to an indebtedness due it by the cattle company, largely in excess of the deposit, and there were then no funds on hand, or any deposit whatsoever, of the cattle company out of which any payment could be made of the draft when presented; at the time of the application of the funds by the bank to the cattle company's indebtedness to it, the cattle company was hopelessly insolvent, and hence it became necessary to make the application of the funds to protect appellant, who was acting within its legal right; on 29th day of April, 1916, a receiver had been duly appointed by the district court of Jackson county, and had taken charge of all of the

properties of said cattle company, to be administered under the orders and decrees of that court, and thereafter all of its properties were legally sold out, the assets administered, and final distribution made of all moneys received; that appellee was a party thereto, and bound by the orders and decrees of that court; that if appellee ever had any right to collect the draft, or was entitled to any of the funds in the bank, such right ceased immediately upon the appointment of the receiver, and all assets of the cattle company, including any claim it may have had to funds in the San Antonio National Bank, were passed to and drawn to the custody of the court in the receivership, for the ultimate disposal thereof by the court, subject to appellant's right of application of the funds to the cattle company's indebtedness to it; that the San Antonio National Bank's right to apply thè said deposit to the indebtedness of the cattle company in pursuance to the intervention filed, setting up the indebtedness and showing the credit allowed against said deposit which was applied pro tanto by the bank, was in all things recognized by the court in the receivership and adjudicated in favor of appellant.

The court overruled all exceptions and pleas, and thereupon the case was tried before a jury, wherein questions were submitted for their determination upon special issues submitted by the court. Upon their answer to such special issues judgment was rendered by the court in favor of appellee against appellant for the sum of $5,000, standing in the name of the cattle company on appellant's books; also against appellant for the sum of $6,510.88, with 6 per cent. interest per annum from May 14, 1921, and costs of court; further, that she take nothing against the cattle company and its receiver, P. R. Austin, on the note and chattel mortgage, without prejudice to recover on the note and chattel mortgage, in the event it is fully adjudicated appellee is not entitled to recover against appellant. All costs were adjudged against appellant. The case is briefed by appellant, but no brief has been filed by appellee. The transcript contains 90 pages, and the statement of facts contains 393 pages, while the brief contains some 37 assignments, together with the points of law presented therein. There are involved in the case but few real and important questions discussed by appellant, and in the absence of any brief from appellee we will be compelled to look for assistance largely and depend upon the statement of the case made in appellant's brief, which contains also a full statement of the facts.

[1] The first question presented for decision is as to the legal effect of the draft drawn by the said R. E. Ward for the cattle company in favor of appellee on appellant bank and claimed to be thereby assigned and transferred to appellee. While being indebted to Conn in the amount represented by the note of the cattle company secured by cattle, it was also greatly indebted to appellant. After some previous negotiations, R. E. Ward, the president of the cattle company, finally mailed this draft to Conn because, as he says, he was expecting trouble with the creditors. At that very time there was a suit pending against it in Fort Worth for $115,000, which he said in case of judgment against him would cause trouble with his other creditors, for he was desirous to pay off small creditors so that he could handle its finances. The effect of such purpose to favor small creditors would thereby place it beyond the reach of others, and thereby hinder and delay their collection until he could make arrangement with others; clearly a preference of one set of creditors over another. The law does not look with any favor on such a proceeding, plan, or purpose, which in any event is to hinder and delay some of his creditors. Seligson & Co. v. Brown & Brown, 61 Tex. p. 180.

[2] The draft was drawn on the 26th day of April, 1916, and received by Conn on the 29th day of April, 1916. It was delivered "for collection" to the Kirbyville State Bank, who wired to appellant:

"We have for collection Ward Cattle & Pasture Co. draft for $5,000.00 in favor of R. C. Conn. Will you pay same?"

To which, on April 29, 1916, appellant answered:

"Check of Ward Cattle & Pasture Company $5,000.00 is good to-day."

The wire to appellant was notice that the Kirbyville Bank held the draft simply for collection, and wanted the appellant to answer if it would pay the same, no time being specified, but the presumption is that it meant would it be paid upon presentation. The San Antonio National Bank did not answer the question in the affirmative, that it would then or thereafter pay it, but simply said it "is good to-day," from which the Kirbyville Bank should have inferred and understood that it meant it must be presented "to-day" and no other day. It gave information upon which a wise bank should have acted. It never came back with a further wire, seeking to get appellant bank to hold that fund represented by a draft it held for collection in a remote part of the state. Conn knew the cattle company was financially embarrassed, if not insolvent, because it took security for the note due him; besides, he had made previous extensions thereon. The draft reached San Antonio on Sunday, April 30, 1916, and on Monday appellant wired Kirbyville Bank, "Cannot pay draft," and returned it. Before the presentation of the draft for payment, appellant had been advised that a receiver had been appointed for the Ward Cattle & Pasture

Company, and when presented refused the payment of the same, having previously wired the Kirbyville Bank it could not pay. The San Antonio National Bank immediately applied the deposit of the Ward Cattle & Pasture Company to its own debt.

Conn, himself, had no correspondence with appellant. He relied on no statement, promise, or inducement made to it by appellant that should cause him to part with anything. The draft was received by Conn in Kirbyville through due course of mail, for the purpose of extinguishing a prior existing indebtedness, forwarded to him in a letter from Blessing, Tex., of April 26, 1916, requesting him to "mark the note paid and send same with release to the clerks of the counties in which you have filed the mortgages."

[3] There is nothing to show by any testimony, oral or otherwise, that it was the intention, otherwise than is shown on the face of the plain language usual in ordinary drafts, on the part of any one, that Conn received and accepted the draft as an assignment of any fund in the bank. The fund there was in no sense a special deposit for him to draw against to pay any special class of claims, but was represented by deposits placed there from time to time arising from proceeds of cattle mortgaged to secure appellant. In 20 minutes after appellant wired the message to the Kirbyville Bank, there was nothing to prevent the cattle company from checking out every cent of the deposit, unless it be that the appellant bank exercised its prior right to apply any part of that general deposit arising from sale of cattle that were mortgaged to its own indebtedness. Neely v. Grayson County National Bank, 25 Tex. Civ. App. 513, 61 S. W. 560; Bank v. Millard, 10 Wall. 155, 19 L. Ed. 897; Christmas v. Russell, 14 Wall. 69; First Nat. Bank v. Whitman, 94 U. S. 345, 24 L. Ed. 229; House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561; Chapman v. White, 6 N. Y. 418, 57 Am. Dec. 464; Harris County v. Campbell, 68 Tex. 28, 3 S. W. 243, 2 Am. St. Rep. 467; Beardsley v. Warner, 6 Wend. (N. Y.) 608, 614; Traders' Nat. Bank v. Cresson, 75 Tex. 298, 12 S. W. 819; Foley v. Hil, 9 Eng. Reprint, 1005; Brandao v. Barnett, 8 Eng. Reprint, 1620; Van Winkle Groc. Co. v. Citizens' Bank, 89 Tex. 147, 33 S. W. 862; Gamer v. Thomson, 35 Tex. Civ. App. 283, 79 S. W. 1083; Templeman v. Hutchings, 24 Tex. Civ. App. 1, 57 S. W. 868. These deposits were proceeds of cattle sold which were mortgaged to secure this very debt due appellant.

It may be that in some cases the intention with which a party does a particular thing is material and should be considered, but the intention with which this fund was sought to be drawn out was to pay off certain creditors so as to be in a position to handle larger ones. This secret intent cannot be the basis of any lawful contract to assign the fund in the bank. If so, it was in no way submitted as an issue in the case to the jury to find out. In fact the court refused to submit the issue as it was correctly presented in the special request of appellant covering the point.

The indebtedness of the Ward Cattle & Pasture Company to the appellant was transferred in trust to George W. Brackenridge, trustee, on December 30, 1915, to collect and turn proceeds over to appellant. Upon all such indebtedness Brackenridge intervened in the receivership proceedings. Among notes intervened upon was a note for $18,000 and upon which note was allowed a credit of $8,060.07, the amount on deposit to the credit of Ward Cattle & Pasture Company at the time of the presentation of said draft.

The decree was rendered closing the receivership of the Ward Cattle & Pasture Company, and making final distribution of all its assets among persons to whom some of the assets were to be distributed, including appellant, and the remainder, after paying certain matters and claims, was paid over to Brackenridge on his intervention. R. C. Conn did not intervene in said receivership proceedings, obviously relying upon the supposed legal right to collect that amount from appellant.

[4] The claim that the fund in the bank was assigned is based upon Ward's testimony, who stated:

"That at the time of the issuance of the draft to R. C. Conn and in forwarding it to Kirbyville it was his purpose and intention to appropriate that fund in the San Antonio National Bank in so far as it would go to the payment of the draft; that he was selling the cattle at the time and was accumulating funds for certain obligations that he wanted to take care of, including Mr. Conn, and when he thought he had money enough there (referring to the San Antonio National Bank), and the ten days' extension granted by Mr. Conn was about up, he sent the check there as he had promised to do; that his purpose and intention in executing and sending to R. C. Conn the draft was to appropriate the funds in the San Antonio National Bank to the credit of the Ward Cattle & Pasture Company to the payment of the Conn debt; that he instructed Mr. Sartwell to ascertain his balance in the bank, and they discussed between themselves whether or not they had money enough in the bank to satisfy the Conn debt and also the obligation to Gilbert."

[5] There is no language contained in the letter that indicates an intention to assign the fund. The oral testimony of Ward, the president of the cattle company, shows only his own secret purpose and intent, and no agreement made at the time he drew the check and wrote the letter inclosing it. In fact it was not known, when Kirbyville Bank received it for collection, there were any funds on hand to pay it as indicated by the wire. There was no evidence that justified

the court to submit to the jury the special issue that—

"In the execution and delivery of the draft drawn by R. E. Ward * * * in favor of R. C. Conn, * * * was it the intention of said Ward and of said Conn that said draft should operate as an assignment pro tanto of the money on deposit in the San Antonio National Bank to the credit of the Ward Cattle & Pasture Company?"

This assumes that at the making, execution, and delivery of the draft Ward and Conn intended that the draft should operate as an assignment, for these instruments were written at Blessing and forwarded by due course of mail to Conn, who was then at Kirbyville.

[6] The charge should not have been given, but, if given, it was error on the part of the court in refusing to give appellant's charge on the same subject to the effect:

"To constitute an equitable assignment of $5,000 of said fund you must further find from the evidence that at or before the drawing of said draft and the delivery of same it was agreed by the said Ward Cattle & Pasture Company and the said R. C. Conn that $5,000 of the balance in said bank was assigned to R. C. Conn, and that said draft and the delivery thereof was an assignment," etc.

Without these instructions the jury might well have inferred that the drawing of the draft alone was sufficient to show the intention of Ward and Conn. Appellee never treated it as an equitable assignment, nor did his bank do so when he placed it therein for collection rather than for a deposit to his account. Said bank was careful to wire: "Will you pay same? Answer." It received no answer that the San Antonio National Bank would pay same, but "is good to-day" was its answer.

There was no agreement shown in the remotest degree between Ward, the president of the cattle company, and Conn to assign this fund, only the secret purpose and intent on the part of Ward, the president of the cattle company. Appellant never had notice of any such agreement. The drawing of this draft and the letter to Conn, coupled with the secret intent of Ward, cannot change the nature and character of the transaction and convert this draft or the entire transaction into an assignment of that fund, superior to appellant's right, by attempting thus, by the draft, to place it beyond the reach of creditors and superior to the right of possession of the receiver. The receivership proceeding drew all the assets of whatever kind or character to the jurisdiction of the court for its ultimate administration and disposition through its own receiver.

We do not think the evidence is sufficient to show any agreement that brings the transaction within the rule to create the equitable assignment of the fund. It simply shows a draft not drawn on a special fund and special deposit, but against a general deposit, in the bank where his indebtedness is twice as much as the funds on hand. Bank v. Yardley, 165 U. S. 644, 17 Sup. Ct. 439, 41 L. Ed. 855; McBride v. American Ry. Co., 60 Tex. Civ. App. 226, 127 S. W. 229; Neely v. Grayson, 25 Tex. Civ. App. 513, 61 S. W. 560; First National Bank v. Texas, etc., Co., 168 S. W. 420; Peters v. Hardin, 168 S. W. 1035; Provine v. Bank, 180 S. W. 1108.

A careful reading and consideration of the lengthy facts have convinced us that there is nothing in the plea of estoppel that precluded the bank to offset its debt against the deposit.

[7] To enforce against a party an estoppel growing out of misrepresentations, they must be false, and then there shall also be concealment of facts upon which action was taken, resulting in loss or a material change of position for the words, since fraud lies at the very base of the doctrine of estoppel, and against good conscience to assert rights, and must have reference to a present or past state of things, for if it refers to mere expression of future intention or opinion, it will be governed by the ordinary laws of contract. It must be made to a party ignorant of the facts, with the intention that the party should act thereon, and thereby induce the party to act and rely thereon. Equitable Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Edwards v. Dixon, 66 Tex. 613, 2 S. W. 718; Pomeroy, Equity, vol. 2, § 804; Burleson v. Burleson, 28 Tex. 415.

[8] In examining the testimony in regard to the mortgaging, sales of cattle, application of proceeds, and deposits in the bank, the recitals in the various mortgages and renewals, we find nothing therein whereby the doctrine of estoppel as above stated can have any application to defeat appellant's right to apply that fund to its debt.

This case might be reversed and remanded for the errors mentioned, but another trial, from our point of view of this case, would not change results, as the testimony on the material issues seems undisputed. It is our judgment that the judgment should be reversed and judgment here rendered in favor of appellant; and it is so ordered.

The judgment of the trial court is therefore reversed, and judgment rendered for appellant, and that it go hence and recover all costs.